40 F.3d 187
 68 Fair Empl.Prac.Cas. (BNA) 595,
65 Empl. Prac. Dec. P 43,389
Johnnye ALEXANDER, Plaintiff-Appellee,
v.
GERHARDT ENTERPRISES, INC., an Illinois Corporation, d/b/a
Bailey's Professional Beauty Supply, Defendant-Appellant.
 No. 93-3110.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 12, 1994.
Decided Nov. 14, 1994.
 
 Eugene J. Schiltz, Kenneth Philip Ross (argued), Coleman & Associates, Chicago, IL, for plaintiff-appellee.
 Walter Soroka, Jerome Rotenberg (argued), Rosenfeld, Rotenberg, Hafron & Shapiro, Chicago, IL, for defendant-appellant.
 Before GODBOLD,* FLAUM and ROVNER, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Plaintiff, Johnnye Alexander ("Alexander"), a black woman, filed this employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e. She alleged that the defendant corporation, Gerhardt Enterprises ("Gerhardt"), terminated her employment on account of her race and in retaliation for her opposition to her employer's discriminatory conduct. After the enactment of the Civil Rights Act of 1991 ("1991 Act"), 42 U.S.C. Sec. 1981a, Alexander filed an amended complaint that added an additional count under 42 U.S.C. Sec. 1981, demanded a jury trial, and requested additional relief on the initial Title VII count. The district court dismissed the Sec. 1981 count and struck the claims for compensatory and punitive damages. After a two day trial the jury returned a verdict for Alexander and awarded her $10,000 in back wages. The trial judge recognized that if the 1991 Act was not given retroactive application, Alexander would have had no right to a jury trial. Consequently, the district court announced its own independent findings. On July 16, 1993, the district court entered judgment for Alexander based on its own findings and not the jury verdict, awarding back wages, costs and attorney's fees. On August 3, 1993, the court amended the July 16 judgment to reflect a jury verdict instead of a decision by the court. The defendant appeals, challenging the trial by jury, amount of attorney's fees, and the sufficiency of the evidence. We affirm the district court's decision of July 16, 1993 and vacate the August 3, 1993 order.
 
 I.
 
 2
 Gerhardt Enterprises, an Illinois corporation operating under the trade name "Bailey's Professional Beauty," sells and distributes hair styling and cosmetic products to professional hair styling salons and cosmetologists. Gerhardt also provides educational programs and seminars to beauty professionals. Gerhardt hired Alexander on March 29, 1989, as an educational coordinator for its professional education program.
 
 
 3
 On July 7, 1989, Alexander, as part of her duties, attended a small company meeting at one of the company's stores. Also present at the meeting were Dominic Marella ("Marella"), Gerhardt's educational director and Alexander's direct supervisor; Loretta Masson ("Masson"), Marella's assistant; Jerome Sikorski ("Sikorski"), defendant's director of wholesale operations and a member of its core management team; Walter Gerhardt, Jr. ("Gerhardt, Jr."), Gerhardt's vice-president; and three regional managers. Walter Gerhardt, Sr. ("Gerhardt, Sr.") was also present during portions of the meeting. Alexander was the only black person at the meeting. During the meeting Marella discussed an education event he had recently attended which had been conducted by a hair styling educator who was black. While discussing a procedure related to a type of curl on Caucasian hair, Marella commented that it was a very simple process and "if a nigger can do it, anybody can do it." At trial, the parties offered conflicting testimony as to whether Marella was offering his own opinion or simply quoting the black educator. After a brief pause in the meeting and several uncomfortable moments, the meeting continued.
 
 
 4
 When the meeting concluded, everyone except Alexander went to lunch. After lunch Marella apologized in private to Alexander for making the statement. Alexander requested that he make a public apology. The next day Marella wrote a memorandum to Gerhardt, Jr. informing him of the particular incident. On July 26, 1989, Alexander responded to this memorandum with her own memorandum to Marella, with copies to Gerhardt Sr., Gerhardt, Jr. and Sikorski. Alexander explained in this memorandum that she had been "hurt deeply" by the racist slur and requested a public apology. After receiving the memorandum Sikorski, the Gerhardts and Marella met to discuss the situation.
 
 
 5
 The following day, on July 27, Sikorski and Marella met with Alexander after an education department meeting. Sikorski informed Alexander that she would have to attend an event in St. Louis on a day he had previously agreed to let her have off to visit her mother in Tennessee. Alexander indicated she would comply with the request. Sikorski then commented that Alexander did not seem happy with her job and that they were not happy with her performance. Sikorski, concluding that it would be best if the employment relationship was terminated, fired Alexander. After receiving her letter of termination, Alexander refused to sign it.
 
 
 6
 On November 1, 1989, Alexander filed a pro se discrimination charge with the Illinois Department of Human Rights, which was automatically cross-filed with the Equal Employment Opportunity Commission. In December, 1989, Sikorski sent a letter to the managers of Gerhardt's twenty three retail stores, asking them to summarize any problems or difficulties they may have had with Alexander. Sikorski instructed his managers not to date these responses. After receiving the replies, Sikorski backdated the three negative evaluations of Alexander.
 
 
 7
 Alexander received her Notice of Right to Sue from the EEOC on July 19, 1991. On July 25, 1991, she filed a single count Complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e, alleging that she was terminated because of her race and in retaliation for her opposition to Marella's comment. After the enactment of the Civil Rights Act of 1991, Alexander moved for and, over the defendant's objection, was granted leave to file an amended complaint and demand for a jury trial. The First Amended Complaint added a second count under 42 U.S.C. Sec. 1981 and sought additional compensatory and punitive damages available under the 1991 Act on the Title VII count. On May 14, 1992, the trial court dismissed the second count in light of this Court's decision in Mozee v. American Commercial Marine Service Co., 963 F.2d 929 (7th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992). On September 10, 1992, pursuant to its own motion, the district court struck the claims for compensatory and punitive damages in light of this Court's decision in Luddington v. Indiana Bell Telephone Co., 966 F.2d 225 (7th Cir.1992), cert. denied, --- U.S. ----, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994). The court did not, however, strike the jury demand.
 
 
 8
 On September 17, 1992, after a two day trial, the jury returned a verdict for $10,000 in back wages. After dismissing the jury, the district court announced its own findings. The court, recognizing the then undecided question of the retroactivity of the 1991 Act as it pertained to the availability of a jury trial in Title VII cases, issued independent findings of fact and conclusions of law. The judge concluded that Alexander was fired not because of her race, but in retaliation for her complaint. On July 16, 1993, after further briefing on additional back wages, front wages and attorney's fees, the court entered judgment based on its own decision, consistent with an "advisory" jury. The court awarded $10,000 in back wages, $3,294.95 in costs and $58,480.87 in attorneys' fees and ordered Gerhardt to provide Alexander with a neutral reference and to refrain from making any disparaging comments about her job performance. On August 3, 1993, the court, on its own motion, amended its July 16 judgment to reflect a jury verdict instead of a bench decision and deleted the word "advisory" from the July 16 memorandum opinion. Gerhardt appeals the use of an advisory jury, the amount of the attorneys' fees and the sufficiency of the evidence.
 
 II.
 
 9
 We first address the district court's use of an advisory jury. The 1991 Act created a right to recover compensatory and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964. Rev.Stat. Sec. 1977A(a), 42 U.S.C. Sec. 1981a(a), as added by Sec. 102 of the 1991 Act, Pub.L. 102-166, 105 Stat. 1071. Unlike the 1964 Civil Rights Act, which gave no right to a jury trial, see Lehman v. Nakshian, 453 U.S. 156, 164, 101 S.Ct. 2698, 2703-04, 69 L.Ed.2d 548 (1981) ("there is no right to trial by jury in cases arising under Title VII"); Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 375, 99 S.Ct. 2345, 2350, 60 L.Ed.2d 957 (1979), the 1991 Act also allows any party to demand a trial by jury if compensatory and punitive damages are sought. Rev.Stat. Sec. 1977A(c), 42 U.S.C. Sec. 1981a(c), as added by Sec. 102 of the 1991 Act. However, the 1991 Act, including its provision allowing trial by jury of Title VII claims, 42 U.S.C. Sec. 1981a(c), does not apply to conduct that occurred before its enactment. Landgraf v. USI Film Products, --- U.S. ----, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); Mojica v. Gannett Co., 7 F.3d 552 (7th Cir.1993) (en banc), cert. denied, --- U.S. ----, 114 S.Ct. 1643, 128 L.Ed.2d 363 (1994); see also Saxton v. American Tel. & Tel. Co., Inc., 10 F.3d 526, 536 n. 22 (7th Cir.1993). In this case, the alleged discriminatory conduct all occurred in 1989, well before the enactment of the 1991 Act. Thus, Alexander had no right to a jury trial.
 
 
 10
 We commend the late Magistrate Judge Weisberg's efforts to deal with the jury trial issue in the face of the legal uncertainty of the retroactivity of the 1991 Act. Alexander's trial took place on September 15 and 16, 1992. On September 17, 1992, after the jury verdict, the district court dismissed the jury and set forth its own independent findings of fact and conclusions of law. The district court recognized the undecided retroactivity issue and the procedural problems it posed.[1] Specifically, the district court wanted to avoid a retrial if in fact the 1991 Act was not retroactive and therefore precluded a jury trial. The district court noted that "[i]n order to guard against the need for a retrial if it turns out there is no jury trial of right for a case with this terminology, I expect to now announce my own findings of fact and conclusions of law so that those will be in the record and will be available for any appropriate action by any other court, if there is an appeal." The district court then independently concluded that although Alexander was not fired because of her race, she was fired because of her complaint. This retaliatory discharge, the judge held, violated Sec. 704(a) of the Civil Rights Act. 42 U.S.C. Sec. 2000e.
 
 
 11
 Although Alexander had no right to a jury trial, the district court had the authority to empanel an advisory jury. Federal Rule of Civil Procedure 39(c) governs requests for jury trials in cases in which the parties are not entitled to a jury trial as of right. Rule 39(c) explicitly provides that "[i]n all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury...." Fed.R.Civ.P. 39(c). Convening an advisory jury in this case would have been proceeding on a path subsequently recognized and approved by this Court in Townsend v. Indiana University, 995 F.2d 691 (7th Cir.1993). In Townsend, the district court confronted a similar procedural problem regarding the retroactivity of the 1991 Act. To address this problem, we acknowledged and approved the option of an advisory jury. We concluded that the district court was in the best position to decide how to proceed to "minimize the costs of litigation in the face of the uncertainty created by the unresolved issue of the retroactivity of the new law." Townsend, 995 F.2d at 694.
 
 
 12
 In any event, Gerhardt waived any objection to the use of an advisory jury by failing to raise this issue on appeal. Neither Gerhardt's briefs (primary or reply), nor oral arguments made any mention of the possible impropriety in connection with the notice or the empaneling of an advisory jury.[2] Instead, Gerhardt's sole ground for challenging the use of the jury is Mojica v. Gannett Co., 7 F.3d 552 (7th Cir.1993).[3] Although this Court in Mojica remanded the case for a bench trial, this case presents a distinctly different factual setting. In Mojica, the case initially was tried to a jury, who, after receiving a combined instruction on the plaintiff's section 1981 and Title VII national origin claims, awarded the plaintiff $35,000 in compensatory damages. The district court, however, had improperly allowed the jury to consider Mojica's claims under 42 U.S.C. Sec. 1981, which were barred by Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). As a result, it was impossible to determine which damages were awarded for the Title VII claim and which had been improperly awarded for the section 1981 claim. On appeal, this Court concluded that the jury verdict was "beyond rescue."
 
 
 13
 The instant case is distinguishable from Mojica in two important regards. First, unlike Mojica, the district court here made independent findings of fact and conclusions of law. The judge only utilized the jury in its advisory capacity and not as the determinative trier of fact. Second, unlike Mojica, this verdict is hardly "beyond rescue." In that the only damages awarded were for back pay, no confusion exists as to the type and quantity of damages. The judge determined the underlying liability and damages through his independent findings of fact and conclusions of law. Here, there is no need for a retrial.
 
 
 14
 Gerhardt argues that the ultimate decision of the district court was from the jury and not the judge. To the extent that the trial judge attempted to convert the advisory jury into an actual jury, however, we vacate that order. In its initial July 16, 1993 judgment order, the district court concluded that it "agrees with what it interprets as the advisory jury's determination that under these circumstances $10,000 is an adequate award of back pay." On August 3, 1993, the district court attempted to amend this judgment to "reflect a jury verdict instead of a decision by the court" and deleted the word "advisory" before the word "jury" in the July 16, 1993 ruling. This August 3, 1993 order, however, was inappropriate in that the applicable law, the 1964 Civil Rights Act, gave no right to a jury trial. Furthermore, the 1991 Act, since not applied retroactively, gives no right to a jury trial in these circumstances. The district court judge's attempt to recognize an actual jury verdict was improper. Therefore, we vacate those portions of the district court's August 3, 1993 orders and reinstate the orders and judgment of July 16, 1993, based on the court's own findings of fact and conclusions of law.
 
 III.
 
 15
 Gerhardt also challenges the district court's award of attorney's fees to Alexander. Alexander initially sought $78,334.50 in attorney's fees and $3,294.95 in costs. The district court, after reducing Alexander's fee request by 25% due to over-preparation and excess time spent by her lawyers, awarded Alexander $59,580.87 in fees and $3,294.95 in costs.
 
 
 16
 Congress has provided that a "prevailing party" in a Title VII action may recover its "reasonable attorney's fee" as part of costs. 42 U.S.C. Sec. 2000e-5(k). A district court's award of attorney's fees will be disturbed only if the court commits an error of law in the computation or has abused its discretion in calculating the amount. Tomazzoli v. Sheedy, 804 F.2d 93, 97 (7th Cir.1986); Lynch v. City of Milwaukee, 747 F.2d 423, 426 (7th Cir.1984). This court repeatedly has emphasized that in civil rights and discrimination litigation, district court judges have wide discretion in fashioning reasonable attorney's fees. See Cartwright v. Stamper, 7 F.3d 106, 109 (7th Cir.1993); Estate of Borst v. O'Brien, 979 F.2d 511, 514 (7th Cir.1992); Ustrak v. Fairman, 851 F.2d 983, 987 (7th Cir.1988).
 
 
 17
 A district court judge's discretion, however, is not absolute. The Supreme Court and this Court have fashioned basic standards to guide district court judges. The minimal requirement in order to recover attorney's fees is that the plaintiff be regarded as a "prevailing party." In order to be considered a "prevailing party" in a civil rights action, a plaintiff must obtain at least some relief on the merits. Farrar v. Hobby, --- U.S. ----, ----, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). After concluding that Alexander had been discharged in retaliation for her complaint, the district court awarded Alexander $10,000 in back wages. This conclusion and award on the merits clearly renders Alexander a prevailing party and entitles her to reasonable attorney's fees.
 
 
 18
 The only other consideration is the reasonableness of the fees. In determining the reasonableness of attorney's fees, this court has rejected the notion that the fees must be calculated proportionally to damages. See Wallace v. Mulholland, 957 F.2d 333, 339 (7th Cir.1992) (refusing to reduce $43,000 attorney's fee award on a $15,000 Sec. 1983 judgment and concluding that the Supreme Court has "not required, or even sanctioned, a proportional review of the two awards"); Estate of Borst, 979 F.2d at 516-517 (concluding that "an attorney's fee award need not be proportionate to the damage award"). "The size of the damage award, however, is not the gauge of a plaintiff's victory." Littlefield v. McGuffey, 954 F.2d 1337, 1350-51 (7th Cir.1992) (affirming district court's refusal to reduce attorney's fee award of $140,000 for a $150,000 damage recovery in a Fair Housing discrimination case).
 
 
 19
 While the Supreme Court has never explicitly rejected the proportionality approach, it effectively did so in City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). In an action involving 42 U.S.C. Secs. 1983 and 1988, a four member plurality opinion explicitly rejected the proportionality approach and affirmed an award of $245,000 in attorney's fees where only $33,000 in damages were awarded. Although Justice Powell's fifth and decisive vote turned on the facts of the case, he did limit the rejection of the proportionality approach to cases where the plaintiff's success also serves the public interest. Other interpretations of Rivera have minimized the significance of Justice Powell's concurrence and read the case to reject a proportionality approach. See, e.g., Cowan v. Prudential Ins. Co. of America, 935 F.2d 522 (2d Cir.1991) (explicitly rejecting the proportionality approach in a race discrimination Title VII case); Williams v. Roberts, 904 F.2d 634, 640 (11th Cir.1990) (rejecting the proportionality approach in a Sec. 1983 First Amendment case and concluding that Rivera holds that "attorney's fees in civil rights cases should not be limited to a proportion of the damages award"); Cunningham v. County of Los Angeles, 879 F.2d 481, 485-86 (9th Cir.1989) (rejecting the proportionality test in a Sec. 1983 privacy and arrest claim), cert. denied, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990); Cobb v. Miller, 818 F.2d 1227, 1234 (5th Cir.1987) (rejecting the proportionality approach in Secs. 1981, 1983, 1985, 1986, 1988 wrongful seizure of insurance bond case); Cunningham v. McKeesport, 807 F.2d 49, 52 (3d Cir.1986) (rejecting the proportionality approach in a Sec. 1983 judgment), cert. denied, 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987).
 
 
 20
 Gerhardt contends that Alexander's attorneys overprepared this case and spent excessive time on a relatively simple matter. Perhaps if we were standing in the district court's shoes we might agree with Gerhardt's claim. However, this Court has made clear that "if ever there was a case for reviewing the determinations of a trial court under a highly deferential version of the 'abuse of discretion' standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court." Ustrak, 851 F.2d at 987. This deference, coupled with the district court's careful scrutiny of the fee calculation and its reduction of the award by 25 percent, leads us to leave the award as it stands.
 
 IV.
 
 21
 Finally, Gerhardt challenges the sufficiency of the evidence supporting the district court's conclusion that Alexander was fired in retaliation for her filing the complaint. Section 704 of Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. Sec. 2000e-3(a). In order to establish the prima facie case of retaliation under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff must show: (1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there was a causal link between the protected expression and the adverse action. Brenner v. Brown, 36 F.3d 18, 19 (7th Cir.1994) (per curiam); Juarez v. Ameritech Mobil Communications, Inc., 957 F.2d 317, 321 (7th Cir.1992). If she makes this prima facie showing, the burden of producing a legitimate nondiscriminatory reason for her firing shifts to Gerhardt. Once Gerhardt meets this burden, Alexander bears the burden of showing that Gerhardt's reasons are pretextual and that its actual reason was discriminatory. Dey v. Colt Const. & Development Co., 28 F.3d 1446, 1457 (7th Cir.1994), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
 
 
 22
 On review, this Court will not overturn the district court's findings regarding the retaliation claims unless those findings are clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 84 L.Ed.2d 518 (1985); Brenner v. Brown, 36 F.3d 18 at 19; Rennie v. Dalton, 3 F.3d 1100, 1106 (7th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994); Starks v. George Court Co., Inc., 937 F.2d 311, 314-315 (7th Cir.1991). This Court has explicitly noted that district court findings "will not be overturned if they are supported by evidence or inferences which avoid the realm of nonsense. In other words, the defendants must leave us 'with the definite and firm conviction that a mistake has been committed' by the district court." Starks, 937 F.2d at 314-315 (citations omitted).
 
 
 23
 Here, the district court's findings are well supported by the record. Alexander established her prima facie case of retaliatory discharge. The record reflects that Alexander engaged in statutorily protected expression. Her July 26, 1989 memorandum clearly indicated her negative emotional reaction to Marella's comment. The professional and noninflammatory memorandum set out her position as well as her requested relief. Furthermore, the copies she sent to Gerhardt Jr., Gerhardt Sr., and Sikorski served to notify her employers of her problems with Marella's comments. Gerhardt argues that Alexander's expression is not protected because she did not expressly request that Marella cease making racist slurs. Both the tone and content of her memorandum make it abundantly clear, however, that her intent was not only to receive a public apology, but also to prevent similar comments in the future. We do not require an employee to explicitly implore her employer to stop engaging in racist slurs. In settings such as this, the notification and complaint about the offending incident suffice.
 
 
 24
 Gerhardt also argues that Marella's single racist slur did not amount to a discriminatory "practice" and therefore Alexander could not make out a successful claim of opposing an unlawful employment practice. Gerhardt is incorrect. The conduct a plaintiff opposes need not actually violate Title VII. Dey, 28 F.3d at 1458. A plaintiff does not have to succeed on her discrimination claim to make out a prima facie case of retaliatory discharge. Rather, the test is whether she reasonably believed in good faith that the practice she opposed violated Title VII. Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1314 (7th Cir.1989); Jennings v. Tinley Park Community Consolidated School Dist. No. 146, 796 F.2d 962, 967 (7th Cir.1986), cert. denied, 481 U.S. 1017, 107 S.Ct. 1895, 95 L.Ed.2d 502 (1987). The district court concluded that the "action she complained about was an action that she reasonably believed to be racially offensive." This conclusion was not clearly erroneous. Alexander testified that she believed that Marella's racist comment violated the law. She further testified that this belief led her to write the memorandum. Both her comments to Marella immediately after the incident, as well as the substance and tone of her memorandum, indicate her good faith belief that Marella's comments were in violation of law.
 
 
 25
 Second, Alexander suffered an adverse action by her employer. Gerhardt fired Alexander after her complaint. Despite conflicting testimony on the matter, the district court rejected Gerhardt's contention that Alexander agreed to the termination of the employment relationship, and concluded that Gerhardt did in fact fire Alexander. After the July 27, 1989 meeting, Sikorski approached Alexander and told her that she "didn't seem to be happy with the job, and they weren't happy with [her] performance." Sikorski then stated that it would be best if they terminated their relationship. Furthermore, the record indicates that Marella suggested that Gerhardt fire Alexander. Additionally, Sikorski's attempts to back date Alexander's evaluations and create the appearance that Alexander was terminated because of her incompatibility, further support the position that she was in fact terminated and that Gerhardt now was scrambling to concoct a legitimate reason for the termination.
 
 
 26
 Finally, there is a causal link between the protected expression and the adverse action. This Court has concluded that a plaintiff may establish a link through evidence that the discharge took place on the heels of the protected activity. Dey, 28 F.3d at 1458; Johnson v. Sullivan, 945 F.2d 976, 980 (7th Cir.1991); Collins v. State of Ill., 830 F.2d 692, 705 (7th Cir.1987). A "telling temporal sequence" can demonstrate this causal link. Holland, 883 F.2d at 1307, 1314. Alexander voiced her complaint to Marella immediately after the incident on July 7, 1989. Three weeks later she wrote a memorandum to Marella and sent copies to her supervisors. The next day, Sikorski fired Alexander. This proximity in time between Alexander's complaint and the next day firing demonstrates the necessary causal link.
 
 
 27
 In response to Alexander's prima facie case, Gerhardt succeeded in articulating a legitimate nondiscriminatory reason for Alexander's discharge--unhappiness with her performance, her incompatibility, and complaints about her work.[4] Several witnesses testified that Alexander had missed meetings. She also failed to submit written reports on time which were part of her job responsibilities and requested by her supervisors. Gerhardt presented evidence that Alexander did not fulfill all of the responsibilities which her job required and that the company had received complaints about Alexander from several store managers. The defense also presented evidence that Alexander had encountered employment difficulties with previous employers. Further, the defense presented evidence that Alexander's supervisors were displeased with her work, that Alexander was no longer happy with her job, and that her work reflected this discontent.
 
 
 28
 Despite Gerhardt's articulation of a legitimate non-discriminatory reason for the termination, the record adequately supports the district court's implicit finding that Gerhardt's proffered reasons were pretextual and that its actual reasons were retaliatory. First, Alexander produced evidence that she was in fact performing her duties adequately. Several witnesses testified that their largest complaint with Alexander's work was the quality of coffee she made for her coworkers. Evidence of satisfactory job performance by itself is "insufficient to raise a question of fact about an employer's honest assessment of inadequate performance." Dey, 28 F.3d at 1460, citing Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir.1992). However, Alexander's claims go beyond mere assertions of adequate job performance. The record reflects that despite Gerhardt's claims about Alexander's performance, she was never disciplined nor did she ever hear complaints or criticism from her supervisors. She never received any warnings or threats of suspension. The record contains sufficient evidence that it was only after the July 7 incident that concerns arose regarding her status at the company. Furthermore, the record contains evidence that it was immediately after she sent her memorandum to her supervisors that they held a closed door meeting to discuss Alexander's employment status. Finally, the timing of the firing--immediately after Alexander's memorandum--further supports the conclusion that it was in response to the memorandum and not the result of other performance factors.
 
 
 29
 Thus, Alexander satisfied her prima facie case of retaliatory discharge. Although Gerhardt articulated a legitimate non-discriminatory reason for the termination, Alexander produced sufficient evidence that Gerhardt's reasons were pretextual and that the true motive was retaliatory. Since the district court's findings were supported by the record and not clearly erroneous, we hold that there was no insufficiency of evidence.
 
 
 30
 For the foregoing reasons we VACATE only the district court's order of August 3, 1993 and AFFIRM the remainder of the decision.
 
 
 
 *
 The Honorable John C. Godbold of the United States Court of Appeals for the Eleventh Circuit is sitting by designation
 
 
 [1]
 The district court entered judgment on July 16, 1993, and amended this judgment on August 3, 1993, prior to both this court's decision in Mojica v. Gannett Co., 7 F.3d 552 (7th Cir.1993) (en banc) (decided on September 27, 1993) and the Supreme Court's decision in Landgraf v. USI Film Products, --- U.S. ----, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (establishing that the 1991 Act's jury trial provisions do not apply retroactively)
 
 
 [2]
 Indeed, while it may have been the case, it cannot be conclusively determined from the record that the Magistrate Judge notified the parties prior to trial that he intended to convene an advisory jury under Rule 39(c). In this regard, we acknowledge the approach of other circuits which indicate that the failure to provide such notice is reversible error, as the parties may have engaged in a different trial strategy had they known of the jury's advisory capacity. See Thompson v. Parkes, 963 F.2d 885, 888 (6th Cir.1992) (examining the plain language of the rule and policy considerations of trial tactics and concluding "the rule requires that the court's initiative in ordering a trial to an advisory jury must occur, and the parties be made aware of it, before the case is submitted"); Bereda v. Pickering Creek Indus. Park, Inc., 865 F.2d 49, 53 (3d Cir.1989) (requiring a district court to "notify both sides of a jury's advisory status no later than the time at which the jury selection has begun"); Pradier v. Elespuru, 641 F.2d 808, 811 (9th Cir.1981) (recognizing that "there are frequently significant tactical differences in presenting a case to a court, as opposed to a jury. The parties are entitled to know at the outset of the trial whether the decision will be made by the judge or the jury"); cf. Merex A.G. v. Fairchild Weston Sys., Inc., 29 F.3d 821, 827 (2d Cir.1994) (recognizing "that such notice is preferable," rejecting a per se rule of notice, and requiring instead that the complaining party show "demonstrable prejudice"). Since this issue is not directly before us, we refrain from adopting either the per se rule of notice or the demonstrable prejudice approach
 
 
 [3]
 Gerhardt's brief simply notes this Court's decision in Mojica. It fails to discuss why Mojica applies to the instant case and how the uses of the jury are similar
 
 
 [4]
 Gerhardt initially argued that Alexander was not fired, but rather terminated her relationship voluntarily. Gerhardt then argued, in the alternative, that if the court concluded that Alexander was in fact terminated, it was because of poor job performance and not in retaliation for her complaint