896 F.Supp. 775 (1995)
Michael E. PARKS, Peter J. Nicola, Dred S. Arrington, and Robert D. Dykstra, Plaintiffs,
v.
The UNIVERSITY OF CHICAGO HOSPITALS AND CLINICS, an Illinois corporation, Defendant.
No. 94 C 1490.
United States District Court, N.D. Illinois, Eastern Division.
August 17, 1995.
*776 *777 *778 Martin J. Lucas, Anesi, Ozmon & Rodin, Ltd., Chicago, IL, Michael John Dudek, Chicago, IL, Michael Andrew Moynihan, Moynihan & Dillon, Chicago, IL, for plaintiffs.
Nina G. Stillman, Karen Taylor Donmoyer, Paula Kay DeAngelo, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendant.

OPINION AND ORDER
NORGLE, District Judge:
Before the court are four motions for summary judgment, all filed by Defendant The University of Chicago Hospitals (the "Hospitals"). For the following reasons, all four motions are granted.

I.
Four Plaintiffs filed a Complaint consisting of three counts against the Hospitals based on Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. All claims relate to Plaintiff Michael Parks ("Parks") and his charge of discrimination. Parks, a black male, alleges in count I of the Complaint that the Hospitals refused to promote him because of his race. In count II, he contends that the Hospitals ultimately fired him in retaliation for filing a claim with the Equal Employment Opportunity Commission ("EEOC"). In count III of the Complaint, Plaintiffs Dred Arrington ("Arrington"), Robert Dykstra ("Dykstra"), and Peter Nicola ("Nicola") allege that the Hospitals fired them in retaliation for participating in one of Parks's EEOC charges.
The Hospitals hired Parks in June 1990 as a Bio-Medical Equipment Technician ("BMET"), and a few months later the Hospitals promoted Parks to Senior BMET. In January 1991, an assistant director position opened in his department. Parks was not promoted to assistant director, but he believed that he should have been. As a result, in July 1991, Parks filed his first EEOC charge ("July-1991-Charge") on the ground that the Hospitals did not promote him due to his race. Parks withdrew the July-1991-Charge almost two years later in March 1993. Also in 1993, his shift was eliminated due to restructuring of the Clinical Engineering Department. Instead of changing shifts, Parks requested that he be laid off. The Hospitals, however, decided not to terminate Parks but reassign him. On May 11, 1993, Parks filed his second EEOC charge ("May-1993-Charge") claiming retaliation  in the form of diminished responsibilities  for having filed the July-1991-Charge. Parks was fired on September 9, 1993, and on September 21, 1993, Parks filed his third EEOC charge ("September-1993-Charge"). The September-1993-Charge asserted that Parks was fired either in retaliation for filing the earlier claims or due to his race.
The facts underlying the claims of the other three Plaintiffs relate to their alleged involvement with Parks's July-1991-Charge. In both late 1992 and early 1993, Parks requested, at separate times, the other Plaintiffs to be witnesses in the investigation of Parks's first EEOC claim. On April 15, 1993, Arrington, Dykstra, and Nicola were laid off. The Hospitals contend that the terminations were the result of a reduction in *779 force, but Plaintiffs allege that the terminations were in retaliation for participating in the EEOC investigation.
The Hospitals have filed four motions for summary judgment, one motion per Plaintiff. Each motion contains a detailed statement of undisputed facts with supporting materials and a memorandum which addresses the legal issues as to each individual. The court will consider all four motions for summary judgment in this opinion.

II.
Federal Rule of Civil Procedure 56(c) provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Salima v. Scherwood South, Inc., 38 F.3d 929, 931 (7th Cir.1994); Transportation Communications Int'l Union v. CSX Transp., Inc., 30 F.3d 903, 904 (7th Cir.1994). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To survive a motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Id.; Russell v. Acme-Evans Co., 51 F.3d 64, 67 (7th Cir. 1995). Furthermore, a summary judgment is not a discretionary remedy and must be granted when the movant is entitled to it as a matter of law. Jones v. Johnson, 26 F.3d 727, 728 (7th Cir.1994).
When the courts of this district rule on motions for summary judgment, in addition to Rule 56(c), the courts very seriously consider the Rules of the United States District Court for the Northern District of Illinois ("Local Rules"). Plaintiffs' responses are a prime demonstration of the benefit that can be derived from the Local Rules. The focus here is on Local Rules 12(M) and 12(N) pertaining to summary judgment motions.
These Local Rules may be thought of as forming a sieve through which the factual assertions and supporting evidence are poured; the residue of the sifting process comprises the genuine issues of material fact that go to the merits of the motion. Employed here, Plaintiffs' offerings pour "Like water through a sieve,"[1] leaving no residue. Put in more concrete terms, Plaintiffs' 12(N) Statement does not correctly oppose the Hospital's 12(M) Statement. In the few instances Plaintiffs disagreed with the Hospitals factual assertions, Plaintiffs did not cite to any support in the record. Because all four of the Plaintiffs' 12(N) Statements share this deficiency, the lack of citation to record support is fatal to the entire case. Valenti v. Qualex, Inc., 970 F.2d 363, 369 (7th Cir.1992) (holding that a flat denial to a statement of fact under Local Rule 12 without reference to supporting materials has no standing under the Local Rule).
Local Rules 12(M) and 12(N) provide that unsupported and irrelevant material will not be weighed when considering the possibility of summary judgment. The court will accept only those factual statements that are well pled and are in compliance with Local Rules 12(M)(3), 12(N)(3)(a), and 12(N)(3)(b). Any statements not in compliance are not considered. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994) ("district courts are not obliged ... to scour the record looking for factual disputes"). Those facts which the litigants properly assert in the 12(M)(3) and 12(N)(3)(b) Statements are deemed admitted, unless the responding party contradicts them in the manner specified under Local Rules 12(M) and 12(N)(3)(a). Knox v. McGinnis, 998 F.2d 1405, 1408 n. 8 (7th Cir.1993); see also Early v. Bankers Life & Casualty Co., 853 F.Supp. 1074, 1079 (N.D.Ill.1994) (holding that failure to comply with Local Rule 12(n) results in the admission of material facts). In addition, a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. Edward E. Gillen Co. v. City of Lake Forest, 3 F.3d 192, 196 (7th *780 Cir.1993). The Seventh Circuit has repeatedly upheld the strict application of Local Rule 12(N). LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 389 (7th Cir.1995); Stewart v. McGinnis, 5 F.3d 1031, 1034 (7th Cir.1993) (collecting cases in accord).
The Hospitals appropriately provide a statement of undisputed facts consisting of short numbered paragraphs, supported with specific references to deposition testimony, an affidavit, and parts of the record. See Local Rule 12(M). In contrast, Plaintiffs' Local Rule 12(N) Statements fail to, "in the case of disagreement, [cite to] specific references to the affidavits, parts of the record, and other supporting materials relied upon...." Local Rule 12(N)(3)(a). Parks' 12(N) Statement attempts to disagree with only two out of ninety-one supported paragraphs. Both attempts omit citation to any authority whatsoever. Arrington's 12(N) Statement disagrees with two of the Hospitals' nineteen 12(M) paragraphs. Both contradictions fail to cite to any supporting material. Moreover, one of his disagreements flies in the face of transcribed deposition testimony. Arrington's response to the Hospital's paragraph fifteen reads, "Disagree, Panella testified past performance was not a criteria [sic]." Yet, as cited by the Hospitals, in the deposition of James Panella, the assistant manager, Panella answered that past performance was considered:
Q. Based on what you told me about the difference between this evaluation for the reduction in force and other evaluations, did you even review those other evaluations in order to come up with the numbers you gave for each employees for the RIF?
A. Yes, previous job performance evaluations were considered.
(Panella Dep. 155). Similarly, both Dykstra and Nicola neglect to support their disagreements with reference to record material. For instance, in countering the assertion that there was no evidence Panella knew Dykstra or Nicola participated in the EEOC investigation, both impotently respond that "circumstantial evidence exists to indicate Panella would have known witness identities." (Dykstra 12(N) Statement ¶ 17; see also Nicola 12(N) Statement ¶ 15.)
Again, the Local Rules provide that all material facts set forth in the required 12(M) Statement are deemed admitted when the opposing party's 12(N) Statement does not controvert them. Local Rule 12(N)(3)(b). Plaintiffs overtly neglect to follow the rules. Accordingly, as against each Plaintiff, the Hospitals' properly supported factual assertions are deemed admitted.

III.
The issue, then, is whether the admitted facts sustain the claims of racial discrimination or retaliation. The court first addresses Parks's claim of racial discrimination. Paragraph four of count I contains five allegations of wrongdoing: (1) failure to promote to assistant directorship; (2) contriving a plan to replace Parks by accusing him of falsifying the employment application; (3) demoting him from his supervisory position; (4) coaxing Parks into withdrawing his earlier EEOC charge; and (5) terminating him wrongfully. (Compl. ¶ 4.) However, the Hospitals argue that the court does not have jurisdiction to consider the allegation of the failure to promote. Parks withdrew his July-1991-Charge but did not refer to the failure to promote, which occurred in 1991, in either the May-1993-Charge or the September-1993-Charge. The Hospitals conclude that, since the allegation was not listed in either of his later EEOC charges, the Complaint cannot be based on the failure to promote because it is not reasonably related to the claims listed in the later charges.
A plaintiff may not claim a violation of Title VII unless the claim was originally among the charges made to the EEOC. Harper v. Godfrey Co., 45 F.3d 143, 147-48 (7th Cir.1995). However, an exception to the rule allows claims to be pleaded that are "reasonably related" to the EEOC charges, and that will likely grow out of an EEOC investigation of the charges. Id. at 148. The court finds that Parks's charges of acts occurring in 1991 are not reasonably related, in time or type, to the charges of discriminatory acts occurring in 1993. In addition, the court is persuaded by the Ninth Circuit's *781 holding that withdrawal is an abandonment of one's claim. Rivera v. United States Postal Serv., 830 F.2d 1037, 1039 (9th Cir.1987). Here, Parks withdrew his charge of failure to promote in 1993 and did not raise the issue again. Although Parks argues that he was "deceived and manipulated by Defendant into withdrawing [the 1991] EEOC charge," that is not enough. First, Parks did not assert this in the subsequent EEOC charges. Second, Parks has no evidence to support such a bold assertion of fraud. Accordingly, the court dismisses Parks's assertion of failure to promote.
Concerning the rest of count I, to support a claim of racial discrimination in employment (also known as "disparate treatment" or "intentional discrimination"), a plaintiff may establish that the employer had a discriminatory intent in either of two ways. The plaintiff may establish his case either directly, through direct or circumstantial evidence, or indirectly, through the burden shifting method commonly referred to as the McDonnell Douglas test. Kormoczy v. Secretary, Dept. of Housing Urban Dev., 53 F.3d 821, 823-24 (7th Cir.1995). Parks attempts to prove his claim of demotion and wrongful termination[2] through the indirect method.
Under the burden shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), there are three phases. In the first phase, a plaintiff must establish a prima facie case consisting of four elements: (1) the employee is a member of a protected class; (2) the employee performed his job satisfactorily; (3) the employee suffered an adverse employment action; and (4) a similarly situated member of a non-protected class was treated more favorably. Id.; Hughes v. Brown, 20 F.3d 745, 746 (7th Cir.1994); Armstrong v. United Airlines, 883 F.Supp. 1172, 1178 (N.D.Ill.1995). Parks does not pass the first phase because he cannot make a prima facie case that he was either demoted or terminated for unlawful discriminatory reasons.
Parks alleges that he was demoted when he was "removed from his supervisory position and given non-supervisory employment evaluations in contravention of the written policy of [the Hospitals]." (Compl. ¶ 4.) A demotion may constitute a materially adverse employment change where the employee undergoes, for instance, a decrease in wage or salary, a substantial loss of benefits, a significant cut of important responsibilities, or receives less distinguished title. Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir.1993). But an adverse employment change must be more than an inconvenience or alteration of job responsibilities. Id. Parks admits that, after he was reassigned a new shift, his senior BMET classification, his base wage rate, and required hours all remained the same. Although certain supervisory duties were divided up on the new shift, this is not enough to establish adverse employment action. See Flaherty v. Gas Research Inst., 31 F.3d 451, 456 (7th Cir.1994).
Parks also contends that he was terminated for an unlawful discriminatory motive in count I, and alternatively in count II, he contends that his termination was retaliation for filing EEOC charges. In either claim, even assuming Parks could establish a prima facie claim for either retaliation or unlawful termination, he cannot satisfy his burden of proof to show that the Hospitals' reasons were pretextual. If an employee establishes a prima facie case, the burden shifts to the employer to produce a legitimate reason for termination. Alexander v. Gerhardt Enterprises, Inc., 40 F.3d 187, 195 (7th Cir.1994). Once the employer submits a lawful reason for discharging an employee, the burden shifts back to the employee to prove by a preponderance of the evidence that the employer's reasons were pretextual. Loyd v. Phillips Bros., Inc., 25 F.3d 518, 522 (7th Cir.1994). Here, the Hospitals' lawful reason for discharge is that Parks falsified his employment application materials. Parks, himself, admits that his employment application *782 is "not literally a hundred percent accurate." (Hospitals 12(M) Statement ¶ 13.) Interestingly, the Hospitals looked into the employment applications of those in the Clinical Engineering Department only after prodding from Parks. After the encouragement from Parks, the Hospitals discovered the following: Parks did not list his military service on his application; he did not list a position he had with a company called Crystal Micro Solutions; he claimed to have possessed the title "Head Electronic Engineer" for a company called Parks Enterprises but Parks's brother informed the Hospitals that Parks never had that title; and Parks's resume was not accurate as to his education or experience. (Hospitals 12(M) Statement ¶¶ 6-13, 17.) Parks has presented no record support to refute these factual assertions, nor has he presented his own facts with documentary support that fulfill the burden to prove the Hospital's reason was pretextual. Accordingly, the court grants summary judgment in favor of the Hospitals on counts I and II of the Complaint.

IV.
Count III alleges that Arrington, Dykstra, and Nicola were fired in retaliation for assisting Parks with his EEOC charges. Again, the indirect method of proof is applicable. A prima facie case of retaliation consists of three elements: (1) the employee took part in a statutorily protected activity; (2) the employee suffered an adverse employment action; and (3) there is a causal link between the statutory expression and adverse action. Dunning v. Simmons Airlines, Inc., 62 F.3d 863, 869 (7th Cir.1995); Alexander, 40 F.3d at 195.
Plaintiffs fail to support the third element, the link between helping Parks and their terminations. Such a connection can be supported by a particular temporal propinquity. Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1315 (7th Cir.1989). There is no such temporal relation here. Furthermore, Plaintiffs have not presented any other evidence to support the causal link element. Instead, the admitted facts establish a legitimate reason for discharge  a reduction in force. The Hospitals explain, and support, that as early as February 1993 they intended on reducing employees in the Clinical Engineering Department (the Department of the plaintiffs). The assistant director, Panella, then attended a class to learn the Hospitals procedure for reducing a department's work-force. Panella developed a set number of criteria for laying off employees. Those criteria were tailored to identify which employees best satisfied the needs of the Department. Some of the standards included employees' prior work performance and the extent of their education. It was only after this process that Arrington, Dykstra, and Nicola were selected for discharge as the employees with the lowest rankings. Furthermore, the admitted facts demonstrate that, at the time the decision was made to fire the three Plaintiffs, Panella was not aware that Arrington, Dykstra, and Nicola participated in the EEOC matter. Accordingly, since Plaintiffs cannot establish a prima facie case, let alone prove the Hospitals' reason pretextual, summary judgment is entered as to count III.

V.
For the reasons set forth above, all four motions for summary judgment are granted.
IT IS SO ORDERED.
NOTES
[1] Lewis Carroll, Alice's Adventures in Wonderland (1865).
[2] The claim in paragraph four that "Defendant engaged in a concerted strategy to replace Plaintiff, including accusing him of having falsified his employment application" is subsumed in his wrongful termination claim.