Vernell ARMFIELD, Plaintiff,

v.

Marvin RUNYON, Jr., Postmaster General, U.S. Postal Service, Defendant.

No. 94 C 6823.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 26, 1995.

Gerald A. Goldman, Jonathan C. Goldman, Law Offices of Gerald A. Goldman, Chartered, Chicago, IL, for plaintiff.

Daniel E. May, Assistant U.S. Attorney, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Vernell Armfield, plaintiff in this action, was an employee of the U.S. Postal Service from March, 1990 through April 17, 1992, when he was suspended, allegedly due to violations of Postal Service rules. Mr. Armfield's employment subsequently was terminated. His two-count complaint in this action, brought pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, originally alleged that he was discharged because of his race as well as in retaliation for filing a complaint with the Postal Service Equal Employment Opportunity Counselor. On May 17, 1995, Mr. Armfield voluntarily dismissed his race discrimination claim. Defendant seeks summary judgment on Mr. Armfield's retaliation claim. For the reasons discussed below, defendant's motion is granted.

### I. Undisputed Facts

The undisputed facts in this case show that on October 17, 1991, Mr. Armfield received a

Postal Service letter of warning prepared by Juan Torres, Mr. Armfield's direct supervisor, addressing Mr. Armfield's failure to follow instructions by parking in a certain lot.[1] Mr. Armfield received a second letter of warning on March 12, 1992 from Mr. Torres concerning his failure to deliver mail on March 9, 1992.

On April 17, 1992, Mr. Armfield was issued a seven day suspension for "failure to follow instructions," "conduct unbecoming a postal employee," and "creating a potential safety hazard" due to purported behavior on April 8, 1992 consisting of parking in a lot in violation of orders, telling Jaspar Booker, the Postal Service manager at the postal service facility where Mr. Armfield worked, "suspend me, I don't give a f---, I'm going home" and throwing a glass juice bottle in an employee work area.[2] After receiving notice of the suspension in Mr. Torres' office, Mr. Armfield was instructed to leave the Postal Station. Instead of doing so, he went to his work area, then returned to Mr. Torres' office where he told Mr. Torres and Mr. Booker "that he was going to get them" and afterwards, went back to his work area. Mr. Booker subsequently told Mr. Armfield twice to leave the Postal Station, and while the two were "toe to toe," Mr. Armfield said that he should knock off Mr. Booker's glasses. The Postal Service placed Mr. Armfield on emergency off duty status for threatening a postal supervisor and again told him to leave the premises of the Postal Station. The Chicago Police Department arrived at the Postal Station and arrested Mr. Armfield for assault.

A Postal Service General Order dated May 1, 1991, of which Mr. Armfield was aware, warned employees that fights and assaults could be punished with emergency suspension and/or removal. Mr. Armfield also knew that threatening another Postal Service employee with violence could result in discharge and that compliance with supervisors' directions was required.

Mr. Armfield's informal EEO complaint as well as the complaint in this case assert that his first contact with an EEO counselor was April 21, 1992. On May 28, 1992, Flora Greenlee, an EEO counselor and investigator, contacted Mr. Booker regarding Mr. Armfield's allegations. On or about June 6, 1992, Mr. Armfield received a notice of removal from the Postal Service informing him that thirty days later he would be removed from his position for threatening two supervisors and becoming disruptive on the work room floor.

## II. Retaliation

Under Title VII of the Civil Rights Act, it is illegal "for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). A plaintiff claiming retaliation under this section has the burden of proving by a preponderance of the evidence a prima facie case by showing the following three elements:

(1) she engaged in statutorily protected expression;

(2) she suffered an adverse action by her employer; and

(3) there is a causal link between the protected expression and the adverse action.

*Dey v. Colt Construction and Development Company*, 28 F.3d 1446, 1457 (7th Cir.1994); *Koelsch v. Beltone Electronics Corporation*, 46 F.3d 705, 708 (7th Cir.1995). Once Mr. Armfield establishes these elements, defendant must produce a nondiscriminatory reason for Mr. Armfield's discharge. *Dey v. Colt Construction and Development Company, supra*, 28 F.3d at 1457. Mr. Armfield bears the ultimate burden of demonstrating that the defendant's proffered reason for dismissing him is pretextual because the true reason is discriminatory or the purported reason is not credible. *Id.; Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 869 (7th Cir.1995).

---

**1.** In response to defendant's 12(M) statement, Mr. Armfield admitted that during his employment, Mr. Torres treated him fairly and the two did not have a personality conflict.

**2.** Mr. Armfield does not contest that he was suspended for these reasons but disputes the truth of each.

## A. *Mr. Armfield's Prima Facie Case*

■ Defendant concedes that Mr. Armfield has established the first and second elements of a prima facie case of retaliation. Defendant argues that Mr. Armfield has failed to demonstrate the third component of a prima facie case of retaliation, claiming that he cannot establish a causal link between his protected activity of contacting an EEO counselor and the actions taken against him. A causal link between a protected activity and an adverse employment action typically cannot be present if the employer did not know of the protected activity. *Dey v. Colt Construction & Development Company, supra,* 28 F.3d at 1458 (citations omitted). Circumstantial evidence is sufficient to show an employer's awareness of protected expression, and all that is required of a Title VII plaintiff is to produce evidence giving rise to an inference of such awareness. *Id.*

■ It is undisputed that Mr. Armfield contacted the EEO counselor on April 21, 1992.[3] Mr. Booker admits that on May 28, 1992, the EEO counselor contacted him regarding Mr. Armfield's allegations. Mr. Booker's admission conclusively demonstrates that he knew Mr. Armfield had complained to the EEO counselor by the time Mr. Armfield received a notice of his discharge on June 6.[4] Mr. Armfield received his notice of removal slightly more than one week after Mr. Booker's discussion with the EEO counselor. The fact that the discharge occurred soon after Mr. Booker learned of Mr. Armfield's EEO complaint supports an inference of a causal link between Mr. Armfield's contact with the EEO counselor and his removal, thereby establishing the third element of a prima facie case of retaliation.

*See Dey v. Colt Construction Development Company, supra,* 28 F.3d at 1458–59 (discharge decision four weeks after complaining to supervisors about alleged sexual harassment supported inference of causal link); *Alexander v. Gerhardt Enterprises, Inc.,* 40 F.3d 187, 196 (7th Cir.1994).

## B. *Defendant's Legitimate Reason for the Removal*

■ Defendant asserts in his Rule 12(M) statement of material facts in support of his motion for summary judgment that Mr. Booker's and Mr. Torres' reason for removing Mr. Armfield was "the unacceptable conduct displayed on April 17, 1992 as set forth in the notice of removal." 12(M) Stmt. ¶¶ 31, 33, pp. 5–6. The notice of removal prepared by Mr. Booker and sent to Mr. Armfield stated:

> On April 17, 1992, you were notified by management that you will be served a seven (7) day suspension. You became loud and unruly saying to me, "I will knock those glasses off your f---ing face." You returned to Mr. Torres' office and stated, "I'm going to get both of you, just wait."

The notice further informed Mr. Armfield that two earlier warning letters would be considered "if the charge is sustained." Defendant has articulated a legitimate, nondiscriminatory reason for Mr. Armfield's discharge.

## C. *Pretext*

■■ It is Mr. Armfield's burden to show pretext. He may establish pretext

(1) by showing that a discriminatory reason more likely than not motivated the

---

3. Mr. Armfield says that he either contacted an EEO counselor earlier or told his employer he was going to do so. While his complaint in this case and his EEO complaint say his first contact with an EEO counselor was on April 21, 1992, the difference in dates makes no difference in the outcome of this case.

4. Messrs. Torres' and Booker's affidavits assert that they were not aware that Mr. Armfield had filed any charges with the EEOC "[a]t the time of Armfield's proposed removal." The affidavits do not provide the date or any detail of the "proposed removal" or maintain that Mr. Torres and Mr. Booker did not know of Mr. Armfield's con-

tact with the EEO counselor at that time or at the time the removal notice was mailed. In apparent support of his contention that he was unaware that Mr. Armfield had communicated with the EEO counselor when the decision was made to remove him, defendant has submitted with his reply brief a document sporting a handwritten date of May 19, 1992 referencing Mr. Armfield and a Removal Notice, which is not attached. Defendant has failed to present any evidence explaining this document such as its use in the removal process, the reason it was prepared or the role of the individual who prepared it.

employer . . .; or (2) that the employer's proffered explanation is unworthy of credence.

*Kralman v. Illinois Department of Veterans' Affairs,* 23 F.3d 150, 156 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994). Mr. Armfield attempts to show pretext by arguing that another Postal Service employee, Mr. Alvarado, who apparently is Hispanic, threatened a supervisor and was suspended instead of terminated. However, Mr. Armfield has not established his personal knowledge of Mr. Alvarado's situation nor apparently deposed anyone with knowledge. *See Russell v. Acme–Evans Co.,* 51 F.3d 64, 69 (7th Cir.1995). He has not produced evidence establishing Mr. Alvarado's position at the Postal Service, his specific conduct or language constituting the alleged threat, any detail of the suspension, or that Mr. Booker or Mr. Torres made the disciplinary decision in his case. *See Timms v. Frank,* 953 F.2d 281, 287 (7th Cir.1992), *cert. denied sub nom. Timms v. Coughlin,* 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992).

Mr. Armfield's alternative attempt to show pretext consists of his explanation in his affidavit that his threat "to get them" (Mr. Booker and Mr. Torres) referred to his plan to obtain relief by filing an EEO charge. Armfield Aff. ¶ 1. However, the issue is what Mr. Armfield said and not Mr. Armfield's unarticulated explanation. *See Russell v. Acme–Evans Co., supra,* 51 F.3d at 69. Mr. Armfield has presented no evidence that he told defendant that when he made the threatening statement, he qualified it by saying that he intended to take legal action.[5] Furthermore, Mr. Armfield has not disputed that he threatened to knock off Mr. Booker's glasses. That in itself is a credible explanation for defendant's decision to remove Mr. Armfield. *Id.*

Mr. Armfield has not presented evidence from which a trier of fact could reasonably infer that the defendant's stated reasons for removing him from his employment at the Postal Station were pretextual. *See Hill v.*

*Burrell Communications Group,* 67 F.3d 665, 668–69 (7th Cir.1995). Accordingly, he cannot withstand defendant's motion for summary judgment.

## IV. Conclusion

For the reasons stated herein, the Postmaster General's motion for summary judgment is granted.

---

5. Indeed, Mr. Armfield did not even state in his deposition that this was his true intention. The Seventh Circuit is "highly critical of efforts to patch up a party's deposition with his own subsequent affidavit." *Russell v. Acme–Evans Company, ADM,* 51 F.3d 64, 67 (7th Cir.1995).