**Barbara STARKS,\* Plaintiff–Appellee,**

v.

**GEORGE COURT COMPANY, INC.,
Defendant–Appellant.**

**Nos. 90–2395, 90–2730.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1991.

Decided July 11, 1991.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(a), Barbara Starks has been substituted for Robert Starks, Sr., because of his death on February 20, 1991.

Michael A. Dunn, Librizzi & Dunn, Chicago, Ill., for plaintiff-appellee.

Sherwin J. Malkin, Bobbitt & Associates, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Robert Starks, Sr., brought this action against the George Court Company, Inc. (George Court), alleging that George Court unlawfully discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964. After a two-day trial, the magistrate judge entered a judgment order requiring George Court to provide Mr. Starks with backpay and to reinstate Mr. Starks for the following work season. George Court appealed. For the following reasons, we affirm the judgment of the district court entered by the magistrate judge pursuant to Federal Rule of Appellate Procedure 3.1.

## I

## BACKGROUND

### A. *Facts*

Mr. Starks was employed from July 23, 1985 through August 15, 1985 by George Court as a truck driver and laborer. George Court is a corporation engaged in the business of repairing and restoring industrial and commercial properties. George Court hires bricklayers, tuck-pointers, and laborers (both union and non-union) to work on a seasonal basis, which generally lasts from March through November depending on the weather. Thus, other than administrative staff, George Court does not employ a permanent, year-round workforce.

Bernard J. Rowe has been the owner and president of George Court since he purchased the company in 1980. Rowe oversees the day-to-day operations at George Court and has primary responsibility for hiring and firing employees. Rowe has made the company into an accredited equal employment opportunity employer. Since 1982, Frank Artrip has been the superintendent at George Court. As superintendent, Artrip supervises the construction work at the various job sites and is responsible for appointing a foreman for each job. Artrip is more familiar with an employee's job performance than is Rowe because Artrip visits all job sites on a daily basis. Therefore, Rowe relies on Artrip's recommendations when hiring and firing employees. Indeed, under George Court's normal hiring procedure, prospective employees interview with Rowe first and then with Artrip. In Mr. Starks' case, however, Artrip neither interviewed nor met with Mr. Starks prior to being hired by Rowe.

Mr. Starks alleged that several racial incidents occurred while he was working at

George Court. The first such incident transpired in late July 1985. Dwayne Larry, another non-union black male laborer, emerged from the washroom at George Court a few minutes after the official starting time. Mr. Starks witnessed Larry being reprimanded by Artrip, who said, "What's your excuse now? You people are all alike. You always have an excuse for everything." Apr. 9, 1990 District Court Order (R. 48) at 4.

The first racial incident alleged by Mr. Starks involving himself occurred while he was working for Frank Vesco, a George Court foreman. Vesco's apprentice showed Mr. Starks how to mix mortar. Mr. Starks, possessing no prior construction experience before coming to George Court, was apparently not mixing the mortar quickly enough for the apprentice. Vesco's apprentice shouted to Mr. Starks, "Come on boy. Bring that mortar up to me." Vesco added, "Yeah, boy. You better do what your master tells you." *Id.* at 5. Mr. Starks responded that he had never had a master and never would. Mr. Starks continued to work at the site and had no further problem with Vesco or the apprentice. Mr. Starks never reported the incident to either Artrip or Rowe.

The next racial incident involving Mr. Starks occurred on August 15, 1985, the day before the discharge at issue in this case. Mr. Starks drove to his instructed job site, put up barricades, and began unloading bricks from the bed of a truck. While he was unloading the bricks, three white youths yelled racial epithets at him: "Hey, look at that nigger, look at that coon. That nigger knows what he's doing." *Id.* The boys then picked up rocks and started throwing them at Mr. Starks. Mr. Starks shouted at the boys to leave. Artrip, who was near the incident, told Mr. Starks to leave the boys alone and get back to work. Mr. Starks replied that he would not work under these conditions. The boys ran away when Artrip spoke to them. Mr.

Starks resumed working. Later that day, Artrip sent Mr. Starks back to the shop to pick up some tools. Although the drive usually took fifteen minutes, on this occasion it took Mr. Starks forty-five minutes to reach the shop due to heavy traffic. When he arrived at the shop, Mr. Starks could find no one to help him locate the needed tools. While in the warehouse, Mr. Starks heard Artrip's angry voice over a two-way radio saying, "Where in the hell is that damned boy. If he isn't back here in twenty minutes he can pick up his damned check." *Id.* at 6. Mr. Starks returned to the job site with the supplies and continued to work with Artrip for the rest of the day. Mr. Starks apologized to Artrip for what had occurred that morning, but explained that he could not work under such conditions and would not tolerate being subjected to racial slurs. Artrip said that there was no problem and that Mr. Starks should return the next morning to finish the job.

Mr. Starks arrived for work the next day at 5:30 a.m., half an hour early. Artrip told Mr. Starks to go home because Artrip already had enough people to work that day. Before leaving, Mr. Starks noticed that a white laborer who had been hired after Mr. Starks was loading the company truck and performing other tasks that previously had been Mr. Starks' responsibility.[1] Mr. Starks returned to George Court on Saturday, August 17, 1985 and was again informed by Artrip that he was not needed and told to call back on Monday. When Mr. Starks telephoned Artrip on Monday, August 19, he was told that he was being laid off because work had slowed down. Artrip told Mr. Starks to check back with him in a few weeks. Thereafter, Mr. Starks drove to a number of George Court job sites and saw work continuing as usual without any evidence of a slow down.

Mr. Starks filed a pro se complaint against George Court, alleging unlawful

---

1. As the magistrate judge noted in denying the motion to alter or amend the judgment, it is not clear on the record that a white person was hired to perform Mr. Starks' work after his discharge. There is evidence, in the form of Mr. Starks' testimony, that a recently hired white person of lesser skill was assigned to perform what previously would have been Mr. Starks' work.

racial discrimination in violation of Title VII, 42 U.S.C. § 2000e. Mr. Starks was permitted to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. The court appointed counsel to represent Mr. Starks at the two-day trial held before a magistrate judge on February 12 and 13, 1990.

### B. *The District Court's Findings and Conclusions*

The magistrate judge began by analyzing Mr. Starks' racial harassment claim and concluded that the four racial incidents lacked the repetitive and debilitating effect necessary to prove a hostile work environment claim. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 213 (7th Cir.1986). Mr. Starks does not challenge this ruling on appeal.

The magistrate judge next examined Mr. Starks' wrongful discharge claim under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Relying on *Weihaupt v. American Medical Association*, 874 F.2d 419, 427 (7th Cir.1989), the magistrate judge noted that Mr. Starks was required to show that, in order to present a prima facie case, he was in a protected class, that his job performance was satisfactory, that he was discharged, and that George Court sought a replacement for him. The court found that Mr. Starks met this burden: Mr. Starks "is black. He was performing adequately enough at the time of his discharge to retain his employment. He presented evidence that he was replaced by a white worker." R. 48 at 14.

Having found that Mr. Starks had established a prima facie case, the court then considered George Court's proffered reason for Mr. Starks' termination—that Mr.

Starks quit on August 15 and never returned to work. Mr. Starks, found the district court, demonstrated that this explanation was pretextual. Central to the court's determination were the inconsistent versions presented by George Court of the events surrounding Mr. Starks' departure from George Court. In response to an EEOC questionnaire, George Court claimed that Mr. Starks was discharged on August 15, 1985 for failing to follow his foreman's instructions. However, in an affidavit in support of George Court's motion to dismiss, Rowe stated that Mr. Starks was laid off because of a shortage in work. At trial, Rowe and Artrip testified that Mr. Starks had not been fired or laid off, but rather that Mr. Starks had left work on August 15 and never returned.

The inconsistencies in the testimony of Rowe and Artrip, as well as the evidence presented by Mr. Starks of hostility toward blacks, persuaded the magistrate judge to find George Court's explanation of the circumstances of Mr. Starks' departure unworthy of credence.[2] On this basis, the magistrate judge concluded that Mr. Starks had demonstrated that George Court terminated him because of race in violation of Title VII. The magistrate judge awarded Mr. Starks backpay in the amount of $2800, ordered George Court to reinstate Mr. Starks for the upcoming work season,[3] and awarded Mr. Starks attorney's fees of $9990.05 and costs of $736.76 ($614.30 of which was to be repaid to the District Court Fund). George Court appeals the district court's finding that George Court discriminated against Mr. Starks, the award of attorney's fees, and the amount of attorney's fees.

## II

## ANALYSIS

### A. *Discrimination Claim*

This court recently has noted that challenges to the factual findings of the district

---

**2.** George Court's only explanation for the inconsistencies was that the EEOC response was prepared without the benefit of counsel. Rowe's affidavit in support of George Court's motion to dismiss, however, was prepared with the assistance of counsel.

**3.** At oral argument, this court was informed that Mr. Starks recently had died. Therefore, we need not address the district court's order requiring George Court to reinstate Mr. Starks.

court face "a substantial hurdle." *Chesser v. Illinois,* 895 F.2d 330, 335 (7th Cir.1990). We review the factual findings of the district court under a clearly erroneous standard. *See, e.g., id.; EEOC v. Sears, Roebuck & Co.,* 839 F.2d 302, 309 (7th Cir. 1988). These findings will not be overturned "if they are supported by evidence or inferences which avoid the realm of nonsense." *Chesser,* 895 F.2d at 334. In other words, the defendants must leave us "with the definite and firm conviction that a mistake has been committed" by the district court. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

■ George Court's primary contention on appeal is that Mr. Starks failed to carry his burden of proving a prima facie case of racial discrimination. This contention focuses on Mr. Starks' alleged failure to prove that he was replaced by a white worker or that his job performance was satisfactory. However, the Supreme Court's decision in *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), obviates the need for us to examine whether Mr. Starks indeed made a prima facie case. In *Aikens,* the Court stated that

> when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of a reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII.... The prima facie case method established in *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco* [*Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)]. *Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case,*

> *whether the plaintiff really did so is no longer relevant.*

460 U.S. at 715, 103 S.Ct. at 1481 (emphasis supplied). This emphasis on the *entire* record was, Chief Justice Rehnquist explicitly noted, a reiteration of the principles set forth in *Burdine:*

> The plaintiff retains the burden of persuasion.... [H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095 (quoted in *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482). Given the magistrate judge's opportunity to view the demeanor of the witnesses at trial and the inconsistencies in George Court's version of the events surrounding Mr. Starks' departure from George Court, we cannot conclude that the magistrate judge's finding of discrimination was clearly erroneous. It is unfortunate when a company like George Court, whose owners have made a special effort to participate in minority hiring programs, is determined to have violated Title VII. Yet the philosophies espoused by owners are not always practiced by their managers in the day-to-day affairs of a business. Because the magistrate judge's finding of discrimination is not clearly erroneous, we must affirm the finding of discrimination and the award of $2800 in backpay.

### B. *Attorney's Fees*

■ George Court also contests the magistrate judge's award of attorney's fees to Mr. Starks. This argument is based on the fact that Mr. Starks benefitted from court-appointed counsel because he proceeded in forma pauperis pursuant to 28 U.S.C. § 1915. Although Mr. Starks had no obligation to pay either attorney's fees or costs, Congress has provided that the district court may permit the prevailing party in a Title VII action to recover its costs. *See* 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the Unit-

ed States, a reasonable attorney's fee as part of the costs."). Moreover, the Supreme Court has recognized that the absence of a plaintiff's obligation to pay attorney's fees does not preclude an award of statutory fees in civil rights cases. *See Blanchard v. Bergeron,* 489 U.S. 87, 95, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989) ("That a nonprofit legal services organization may contractually have agreed not to charge *any* fee of a civil rights plaintiff does not preclude the award of a reasonable fee to a prevailing party in a § 1983 action ...") (emphasis in original). Under the circumstances of this case, the district court did not abuse its discretion by awarding attorney's fees. Thus, our review shifts to the amount of attorney's fees awarded by the district court.

■ The district court awarded Mr. Starks attorney's fees in the amount of $9,990.05. The court arrived at this figure by multiplying the $85 hourly rate of Mr. Starks' attorney by the number of hours he charged to the case (117.53). The district court found that Mr. Starks' attorney conducted the case in a "restrained and economical" manner. Aug. 9, 1990 District Court Order (R. 67) at 2. Indeed, George Court does not challenge as excessive either the time entries recorded by Mr. Starks' attorney or his hourly rate. Instead, George Court argues that the amount of attorney's fees recovered is unreasonable because it represents more than four times the amount of the judgment awarded to Mr. Starks. The Supreme Court, however, has noted that the value of civil rights litigation cannot be measured by the amount of money damages recovered. The Court thus has "reject[ed] the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Blanchard,* 489 U.S. at 94, 109 S.Ct. at 944. Considering the significant but unquantifiable value of successful civil rights suits, the modest financial recovery obtained for

Mr. Starks, as well as the court's order that George Court reinstate Mr. Starks, the amount of attorney's fees awarded was reasonable.

## CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.