In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1195

KELLEY DONLEY,

*Plaintiff-Appellant,*

*v.*

STRYKER SALES CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-CV-5586 — **Charles P. Kocoras**, *Judge.*

ARGUED FEBRUARY 28, 2018 — DECIDED OCTOBER 15, 2018

Before MANION, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Kelley Donley sued her former
employer, Stryker Sales Corporation, for retaliation under Ti-
tle VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3. She
argues that Stryker fired her in retaliation for filing an internal
complaint against a sales manager who had sexually harassed
another employee. The district court granted summary judg-
ment for Stryker, finding that Donley did not offer evidence
supporting a causal link between her harassment complaint

and Stryker's decision to fire her. Applying the familiar standard for summary judgment, we must give Donley as the non-moving party the benefit of conflicts in the evidence and any reasonable inferences in her favor. Under that standard, we find a genuine issue of material fact about the reason Stryker fired her. We therefore reverse the judgment and remand for trial.

Our account of the facts here does not vouch for the objective truth of every detail but applies the summary-judgment standard to the evidence, and there are some key disputed facts. In 2010, Donley began working as the corporate-accounts director for Stryker, a medical-equipment manufacturer and retailer. She repeatedly failed to submit her expense reports, however, and was demoted to clinical manager.

In June 2014, Donley learned from co-workers that one of Stryker's sales managers had sexually harassed a subordinate. Donley filed a formal harassment complaint with Stryker's director of human resources, Stacie Ferschweiler. Stryker investigated the complaint, resulting in the firing of the manager, though he also received a substantial severance package.

In August 2014, just after that manager was fired, Stryker began investigating Donley herself. The focus was an incident six weeks earlier at a team meeting in Vail, Colorado. One evening, Donley had taken photographs of the female CEO of one of Stryker's vendors in an intoxicated state. Donley had then shared the photographs with co-workers. During this investigation, Donley denied taking any videos or photographs of the vendor that were "compromising." She maintained that she had escorted the vendor up to her hotel room out of concern for her safety.

The parties dispute precisely when Donley's photographs first came to the attention of human resources director Ferschweiler and Donley's supervisor, Jeff Thompson. Donley said that she showed Thompson the photographs at the hotel bar in Vail on the night she took them. Stryker's written response to Donley's EEOC charge said that Donley showed the photographs to Thompson, that Thompson was "unamused," and that he told Donley to delete the photographs.

In the lawsuit, however, Thompson has denied seeing the photographs that night in Vail. He testified in his deposition that he recalled hearing about the incident from other employees some time after the team meeting. He also testified that he told Ferschweiler about the photographs before the formal investigation had commenced. If his testimony on that last point is credited, it helps Donley because Ferschweiler testified differently. She testified that she did not learn about the Vail incident until August 2014 when she conducted an exit interview with a departing employee who complained about Donley's unprofessionalism.

In any event, Ferschweiler conferred with Thompson over the investigation's results. According to Stryker, they decided that Donley should be fired because taking photographs of a valued partner while intoxicated was unacceptable. The termination letter stated that Donley had engaged in "inappropriate conduct and poor judgment" and that her conduct violated Stryker's employment policies. Unlike the sales manager she had complained about, she was not offered a severance package.

Donley then sued Stryker under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3, for retaliating against her based on the internal complaint she had filed. In her view,

Stryker's retaliatory motive can be inferred from the suspicious timing of her firing (only six weeks after she filed the complaint); from the more favorable treatment afforded to the manager who was also fired for misconduct; and from evidence of pretext—specifically Stryker's inability to explain how her conduct violated company policy, and especially Thompson's and Ferschweiler's inconsistent recollections of learning about the photographs. From Donley's point of view, Thompson had originally told her to delete the photographs but had not thought any further response was needed. And Ferschweiler had learned of the Vail incident without taking any action herself. As Donley views the evidence, Ferschweiler and Thompson did not conclude that she should be fired over the Vail incident until after Ferschweiler and/or Thompson had learned that she had engaged in activity protected by Title VII, complaining about another manager's sexual harassment of another employee

The district court granted summary judgment for Stryker. Applying the standard set forth in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764–65 (7th Cir. 2016), the court found that the evidence as a whole could not lead a reasonable factfinder to conclude that Donley's internal complaint caused her termination. According to the court, the "undisputed material facts demonstrate that Stryker terminated Donley's employment because of her own drunken conduct in Vail, Stryker's policies, and its valued relationship with the CEO." The court deemed irrelevant the dispute over when Thompson learned about the photographs because the decision was made to fire Donley before he knew about her internal complaint. Without knowledge of Donley's internal complaint, the court reasoned, a desire to retaliate against Donley for her internal complaint could not have motivated his actions. Further, the

court concluded, Donley was not directly comparable to the fired manager who had received a severance package; he held a more senior position, reported to a different superior, and was fired for different conduct by different decision-makers.

On appeal, Donley argues that the suspicious timing of the investigation could convince a reasonable factfinder that Thompson and Ferschweiler decided to fire her in retaliation for filing the internal complaint. She has offered evidence that both Thompson and Ferschweiler knew about the photographs before the August 2014 investigation. Neither took any disciplinary action against her until after she reported the other manager for sexual harassment. She points to Stryker's response to her EEOC charge. Stryker said that Thompson saw the photographs at the team meeting in Vail. That evidence is helpful to Donley, both in contradicting Stryker's defense in the lawsuit and also in suggesting that Thompson did not think Donley's actions in Vail warranted her firing, at least initially.

Stryker counters that the EEOC statement should not be admissible as evidence against it. Stryker contends that this court has been "reluctant to give substantial weight to a position taken in adversary proceedings before the Department [of Human Services]." See *McCoy v. WGN Cont'l Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992). In *McCoy* an employer accused of age discrimination asserted conflicting positions in administrative proceedings and federal court. We concluded that the discrepancy was not evidence of "*per se* pretext" because parties in administrative forums are influenced by different factors and incentives that may not exist in federal court. *Id*. at 373–74.

Those considerations may affect the weight of the evidence, but they certainly do not authorize exclusion of an employer's EEOC response when offered as an admission of a party opponent. See Fed. R. Evid. 801(d)(2); *Starks v. George Court Co.*, 937 F.2d 311, 314 n.2 (7th Cir. 1991) (using EEOC response as evidence of inconsistencies in employer's reasoning); *E.E.O.C. v. C.G. Schmidt, Inc.*, 670 F. Supp. 2d 858, 868–69 (E.D. Wis. 2009) (illustrating how inconsistent and shifting explanations in employer's position statements to EEOC may require denial of summary judgment); *Frazier v. Indiana Dep't of Labor*, 2003 WL 21254424, at *4–5 (S.D. Ind. 2003) (Tinder, J.) (deciding motion in limine on permissible uses of employer's position statements to EEOC); *Thomas v. Big Lots Stores, Inc.*, 2016 WL 1746366, at *2 (N.D. Ind. 2016) (denying motion in limine to exclude employer's statements of position from evidence).

More generally, an employer's shifting factual accounts and explanations for an adverse employment decision can often support a reasonable inference that the facts are in dispute and that an employer's stated reason was not the real reason for its decision. E.g., *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–48 (2000) (reversing judgment as matter of law for employer; evidence of pretextual reason for firing supported reasonable inference of unlawful motive); *Castro v. DeVry University, Inc.*, 786 F.3d 559, 565 (7th Cir. 2015) (employee can show pretext by identifying weaknesses, implausibilities, inconsistencies, or contradictions in employer's explanation that would allow reasonable person to find it unworthy of credence); *Coleman v. Donahoe*, 667 F.3d 835, 852–53 (7th Cir. 2012) (reversing summary judgment for employer); *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007) (same); *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 890–

93 (7th Cir. 2001) (reversing summary judgment for employer; contradictions in explanation for firing supported reasonable inference that employer's stated reason was pretext for unlawful motive).

Donley also highlights Thompson's testimony that he told Ferschweiler about the photographs before the start of the investigation. In Donley's view, this evidence that one or both decision-makers knew about her alleged misconduct before the investigation (which followed immediately Donley's protected complaint) raises a material factual dispute because a reasonable jury could interpret the delay in starting the investigation as evidence of retaliation.

Viewing the facts at summary judgment in the light most favorable to Donley, *Chaib v. Geo Group, Inc.*, 819 F.3d 337, 340 (7th Cir. 2016), the evidence could convince a reasonable jury that her firing was retaliatory. Donley's timeline, which is supported by evidence in the record, exposes inconsistencies and contradictions between Thompson's and Ferschweiler's accounts of why Stryker began the investigation that ended with Donley's discharge. If the disputed facts are resolved in Donley's favor, a reasonable jury could interpret the suspicious timing as evidence (a) that one or both decision-makers initially found Donley's actions in the Vail incident to be tolerable, and (b) that they decided only later, after she had filed her internal complaint, to use that incident as a pretext to fire her for retaliatory reasons.

Stryker counters that the timing of the investigation of Donley is not material because it is undisputed that Thompson did not know about Donley's internal complaint, and so he could not have fired Donley with retaliatory animus. This argument fails to take into account the involvement of human

resources director Ferschweiler, who was certainly aware of Donley's complaint. There is evidence that she launched the investigation of Donley and the Vail incident about a day after resolving that internal complaint, and she drafted Donley's termination letter after consulting with Thompson about the investigation into the Vail incident. If a person with retaliatory animus "provided factual information or input that may have affected the adverse employment action," then the employer still can be liable for a retaliatory firing. *Matthews v. Waukesha County*, 759 F.3d 821, 829 (7th Cir. 2014). Even if Thompson did not know about the internal complaint, Ferschweiler did, and she played a meaningful role in the decision to fire Donley. The dispute over when Ferschweiler learned about Donley's actions in Vail might therefore help convince a reasonable jury that she harbored retaliatory animus.

As further evidence of retaliation, Donley points to the more favorable treatment afforded to the fired regional sales manager who was the target of her internal complaint and whom she regards as similarly situated to her. She maintains that both of them had been investigated and found to have violated Stryker policies, yet only he received a severance package. Evidence that similarly situated employees outside the legally protected group were treated differently may furnish circumstantial evidence of retaliation or other unlawful motive. *Greengrass v. Int'l Monetary Systems, Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015). To invoke this type of circumstantial evidence of unlawful motive, however, the plaintiff and the comparator normally must have "dealt with the same supervisor, [been] subject to the same standards, and ha[ve] engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates v. Caterpillar, Inc.*, 513 F.3d

680, 690 (7th Cir. 2008) (internal quotations omitted). Perfect congruence is not required, however. The question is whether the two employees are situated similarly enough for reasonable comparison. *Coleman*, 667 F.3d at 846–47.

While such comparisons often present factual issues for juries to decide, we agree with Stryker that in this case, Donley and the fired regional sales manager were too different for this comparison to defeat summary judgment, at least on the record now before us.  Donley and the sales manager reported to different supervisors and were subject to different standards. The manager occupied a more senior position than Donley. Without additional information about the nature and circumstances of the sexual-harassment complaint, the outcome of the internal investigation, and other mitigating and aggravating factors, we could not say that Donley and the sales manager engaged in misconduct of similar gravity so as to justify the comparison.

For these reasons, we REVERSE the grant of summary judgment for defendant and REMAND for further proceedings consistent with this opinion.