*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARK SLAGLE,

       Plaintiff-Appellant,

v

HELLA ELECTRONICS CORPORATION,

       Defendant-Appellee.

UNPUBLISHED
April 13, 2023

No. 360198
Wayne Circuit Court
LC No. 20-012636-CD

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

In this employment discrimination case, plaintiff appeals by right the trial court's order granting summary disposition to defendant HELLA Electronics Corporation under MCR 2.116(C)(10) (no genuine issue of material fact). For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

This case arises out of an interpersonal work conflict between plaintiff and a coworker, Kathryn Cox. Defendant hired plaintiff in 2014 as a warranty engineer at its Michigan location. Warranty engineers are tasked with analyzing customer warranty claims for defendant's automotive parts. Defendant hired Cox in December 2017 as the warranty coordinator at its Michigan location. Plaintiff and Cox were part of the warranty group managed by David Huang. Cox was the only woman in the group, and within a year, she was making complaints about her work environment and specifically plaintiff. Cox claimed in a September 2018 e-mail to defendant's Human Resources department (HR) that defendant had belittled her in a group meeting and was asking her to do non-job-related tasks such as taking out his garbage. HR advised Cox to set appropriate boundaries with her coworkers.

In January 2019, plaintiff and other warranty engineers began making complaints about Cox to Huang. The engineers told Huang that they were having difficulties working Cox, that she was not following procedures, and that she was not open to discussion or constructive criticism. Plaintiff claims that Huang would respond to these complaints by stating, "She's a woman. Be nice to her." In February 2019, plaintiff spoke with Huang's supervisor, Wade Williams. Plaintiff testified that he made the following complaints about Cox to Williams: "[S]he takes everything

-1-

personally. We can't talk with her, have a good conversation. The high drama[,] . . . [she] doesn't accept responsibility." Williams and Huang both testified that they were aware of a work environment problem within the warranty group.

In April 2019, Cox sent another e-mail to HR stating that she had struggled with her coworkers in the warranty group since the beginning of her employment and that her work environment had only become more uncomfortable for her. Cox was hopeful that a solution could be reached. Around this time, plaintiff heard from coworkers that Cox had said that her "second office is in HR" and she had a list of inappropriate comments that plaintiff had made to her that were too "atrocious" to repeat. After learning of these purported statements, plaintiff started making complaints about Cox to HR employee Amy Helner. The first meeting was on April 24, 2019, and Helner testified that her feedback to plaintiff was to focus on his work and not his personal opinions of colleagues. On May 9, 2019, plaintiff returned to Helner to speak about Cox. According to Helner's notes from this meeting, plaintiff informed Helner that he could not work with Cox, that she talks all the time, that he does not like her and that she is annoying. Plaintiff's deposition testimony corroborates that this was the nature of his complaints. Helner testified that plaintiff was very angry that day and that the focus was on having him leave the HR office. Helner informed Huang and corporate counsel about this meeting.

The final meeting between plaintiff and Helner occurred on June 25, 2019. Helner had e-mailed plaintiff to reschedule their scheduled meeting for that day; plaintiff denies seeing that e-mail before going to Helner's office to discuss Cox. In any event, there is no dispute that when plaintiff arrived at Helner's office she told him she could not meet with him and that plaintiff refused to leave until she did. Plaintiff testified that Helner was irritated with him, telling him that "[t]his matter has reached a company president, reached the top levels of the company." Helner testified that plaintiff was "raising his voice and was physically agitated that I rescheduled the meeting." Plaintiff claims that he told Helner at this meeting that if the gender roles had been reversed, i.e., if he was a woman and Cox was a man, that his complaints would have been taken seriously and addressed by now. Helner did not recall plaintiff making a statement to that effect. She also testified that plaintiff's complaints about Cox were never about gender: "It was about the fact that they did not get along."

On July 19, 2019, Huang and Helner informed plaintiff that his position was being transferred to Mexico and would not be replaced, effectively ending plaintiff's employment with defendant. At this time, plaintiff was 65 years old, and the other warranty engineers were 29 years old (Josh Childress), 37 years old (Jason Gibson), and 59 years old (Ijaz Uddin). According to defendant, the position transfer to Mexico had long been in the works. Defendant produced an e-mail from a quality manager in 2018 indicating that there should be an in-house warranty engineer at defendant's production plant in Mexico. Williams and Huang both averred in affidavits that the decision to transfer plaintiff's position was made in "mid- to late 2018." They explained that plaintiff's position was chosen because he was the warranty engineer servicing Daimler Truck North America (DTNA), whose parts were built in the Mexico plant.

After plaintiff's employment ended, his job duties were temporarily assumed by other members of the warranty team, primarily by Childress, who complained of having to perform the DTNA work in addition to his existing responsibilities for no additional compensation. The DTNA work was transferred to Mexico in September 2019. Also in September 2019, the warranty group

was referred to a counseling program to improve the group dynamics. According to Childress, the purpose of the counseling was to determine if the work environment had improved following plaintiff's departure. Cox resigned on September 25, 2019, citing the poor work environment. Childress did the same a couple days later.

Plaintiff brought suit under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, asserting claims of sex and age discrimination as well as retaliation.[1] The thrust of these claims is that plaintiff was treated differently from similarly situated employees on the basis of sex and age. Essentially, plaintiff's claims rest on the facts that he and Cox were making complaints about one another, and other younger engineers were also making complaints about Cox, yet plaintiff is the only one who lost his job.

After discovery was completed, defendant moved for summary disposition under MCR 2.116(C)(10), primarily on the basis that plaintiff's employment was terminated for a legitimate, nondiscriminatory reason, i.e., his job was transferred to Mexico. Defendant argued that plaintiff could not show that defendant's decision to transfer his position was pretextual, and even he if could, plaintiff could not show that it was pretext for unlawful discrimination. In response, plaintiff maintained that the position transfer to Mexico was a pretext to end his employment, relying heavily on the letter from defendant's corporate counsel explaining that plaintiff's work performance was the exclusive reason for termination of his employment. After hearing oral argument, the trial court granted defendant's motion for summary disposition, reasoning that plaintiff failed to create a question of fact that the decision to relocate his engineering work to Mexico was pretextual or retaliatory. The court noted that this decision predated plaintiff's complaints to HR.

## II. ANALYSIS

### A. DISPARATE TREATMENT

Plaintiff first argues that the trial court erred by granting summary disposition of the sex and age discrimination claims. While we agree with plaintiff that there is a question of fact on whether defendant's proffered nondiscriminatory reason for plaintiff's discharge was pretextual, we nonetheless affirm the trial court because plaintiff has not shown that a reasonable jury could conclude that the discharge was a pretext for unlawful discrimination.[2]

---

[1] Plaintiff also alleged sexual harassment and national-origin discrimination. However, he has abandoned these claims by failing to brief them on appeal. See *State Treasurer v Sprague*, 284 Mich App 235, 243; 772 NW2d 452 (2009) ("Failure to brief a question on appeal is tantamount to abandoning it.").

[2] We review de novo a trial court's decision on a motion for summary disposition. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "Summary disposition under MCR 2.116(C)(10) is proper if there is no genuine issue about any material fact and the moving party is entitled to judgment . . . as a matter of law." *Bergen v Baker*, 264 Mich App 376, 381; 691 NW2d 770 (2004). In reviewing a motion under this subrule, courts "considers affidavits,

ELCRA prohibits employers from discriminating on the basis of sex and age. MCL 37.2202 states:

> (1) An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

"[C]ourts have recognized two broad categories of claims under this section: 'disparate treatment' and 'disparate impact' claims." *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 358; 597 NW2d 250 (1999). This case concerns disparate treatment because plaintiff alleges that defendant intentionally discriminated against him on the basis of sex and age. See *White v Dep't of Transp*, 334 Mich App 98, 107; 964 NW2d 88 (2020).

Because there is "no direct evidence of impermissible bias," plaintiff's claim of intentional discrimination must proceed under the *McDonnell Douglas*[3] burden-shifting framework. *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). First, the plaintiff must set forth a prima facie case, which gives rises to a presumption of discrimination. *Id*. at 463. There are variations of the prima facie case because, as the Michigan Supreme Court has explained, "the elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand." *Id*. at 463 n 6. See also *Furnco Constr Corp v Waters*, 438 US 567, 577; 98 S Ct 2943; 57 L Ed 2d 957 (1978) ("The method suggested in *McDonnell Douglas* . . . was never intended to be rigid, mechanized, or ritualistic."). The formulation of the prima facie case most applicable in this case is the "modified *McDonnell Douglas* prima facie approach" outlined in *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997) (opinion by BRICKLEY, J.), which "requires an employee to show that the employee was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct."

The parties dispute only the fourth element, i.e., whether plaintiff was similarly situated to the other workers in the warranty group. As to the sex discrimination claim, plaintiff claims that he and Cox were similarly situated because they were both making complaints to HR about one

---

pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court may affirm a trial court when it reaches the correct result for different reasons. *Sabbagh v Hamilton Psychological Servs*, PLC, 329 Mich App 324, 345; 941 NW2d 685 (2019).

[3] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

another. Similarly, with respect to age discrimination, plaintiff was the oldest warranty engineer and some younger engineers also made complaints about Cox to their manager, Huang. Only plaintiff was affected by defendant's adverse conduct because he lost his job and Cox and the other engineers did not. We agree with plaintiff that for purposes of his claims, the relevant shared characteristic between he and his coworkers is that they all made complaints to HR or their manager relating to the warranty group's work environment. While there are significant differences between plaintiff's conduct and that of his coworkers that will be discussed, the prima facie case is merely the first stage of the *McDonnell Douglas* framework and has been described as a "minimal requirement[]." See *St Mary's Honor Ctr v Hicks*, 509 US 502, 506; 113 S Ct 2742; 125 L Ed 2d 407 (1993).[4] Further, "[t]he purpose of the prima facie case is to force the defendant to provide a nondiscriminatory explanation for the adverse employment action." *Town*, 455 Mich at 699. Accordingly, we will accept that plaintiff has established a prima facie case and move to the evidence relating to defendant's proffered nondiscriminatory reason for the adverse employment action. See *id*.

"[O]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Hazle*, 464 Mich at 464. If the defendant gives a legitimate, nondiscriminatory reason for the employment decision, the presumption of discrimination is rebutted, "and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 134; 666 NW2d 186 (2003).

Defendant has articulated a legitimate, nondiscriminatory reason for termination of plaintiff's employment, i.e., his job was transferred to defendant's Mexico plant. "A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Major v Village of Newberry*, 316 Mich App 527, 542; 892 NW2d 402 (2016) (quotation marks and citation omitted). Plaintiff's attempt to show pretext fails under the second category. That is, there is no dispute that plaintiff's position was in fact transferred to Mexico. But plaintiff argues that defendant's preference to have a warranty engineer at the Mexico plant was not the "actual factor[] motivating the decision" to transfer plaintiff's job. *Id*. Plaintiff contends that the actual motiving factor behind the transfer was to end his employment.[5]

---

[4] This Court is "not bound by federal precedent interpreting analogous questions under Title VII of the federal Civil Rights Act, 42 USC 2000e *et seq*., but that caselaw is generally considered persuasive." *White*, 334 Mich App at 112-113.

[5] Defendant seems to suggest that because it is "objectively true" that the position was transferred to Mexico, that plaintiff cannot show pretext. Defendant is mistaken for the reasons discussed above, i.e., the nondiscriminatory reason can be pretextual even if it has "a basis in fact," so long as the plaintiff shows that the proffered reason was "not the actual factor[] motivating the

-5-

The trial court concluded that plaintiff could not show pretext because the decision to transfer his position was made in 2018, months before he started making complaints of Cox. In support of this position, defendant has provided two e-mails from a quality manager, Dr. Christopher Bode, to Huang and Williams. These e-mails, sent in November 2017 and February 2018 respectively, show Bode's preference (and perhaps a company policy) of having an "in-plant" warranty engineer at the production plants and that having such an engineer at the Mexico plant was "urgent." Huang and Williams provided affidavits attesting that the decision to transfer plaintiff's position to the Mexico plant was made in "mid- to late 2018."

While we acknowledge that Bode's e-mails constitute evidence in defendant's favor, there are reasons why they should not be deemed dispositive. First, aside from these initial e-mails, defendant has not provided any e-mails or documentation corroborating Huang and William's account that the decision to transfer plaintiff's position was made in mid to late 2018. Cf. *Smith v Alabama Dep't of Pub Safety*, 64 F Supp 2d 1215, 1219 (MD Ala, 1999) (holding that the reason for transferring plaintiff from one city to another had not been shown as pretextual when the decision was "the result of a *well-documented* departmental reorganization.") (emphasis added). And summary disposition solely on the basis of a witness's affidavit or deposition testimony, even if not directly contradicted by other evidence, is inappropriate because "the jury is free to credit or discredit any testimony." *Kelly v Builders Square, Inc*, 465 Mich 29, 39; 632 NW2d 912 (2001).

Further, while questions about a defendant's business judgment do not create an issue of fact regarding whether a decision was pretext, *Town*, 455 Mich at 695, pretext may be shown by questioning the believability of the employer's proffered explanation, see *Opara v Yellen*, 57 F4th 709, 723 (CA 9, 2023). Here, defendant has not adequately explained why it would not provide any notice to plaintiff and the other warranty engineers of the purportedly long pending position transfer and instead disclose this information simultaneously with plaintiff's termination, leaving others to suddenly assume plaintiff's duties in addition to their normal workload. Evidence that members of the warranty team were required to attend counseling following plaintiff's termination also supports a finding of pretext. Childress attested that the purpose of this counseling was to determine if the work environment had improved following plaintiff's departure, which indicates that the position transfer to Mexico was not the real or only reason for termination of plaintiff's employment.

---

decision." *Major*, 316 Mich App at 542. The Sixth Circuit has more fully explained the rationale behind this method of proving pretext:

> A plaintiff using the second option admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, but attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. [*Johnson v Kroger Co*, 319 F3d 858, 866 (CA 6, 2003) (quotation marks and citation omitted).]

Finally, plaintiff relies on a September 2019 letter from defendant's corporate counsel stating that, after an investigation, plaintiff was terminated because of his work performance. The letter makes no mention of the position transfer to Mexico as the reason for termination of plaintiff's employment. "[A]n employer's shifting factual accounts and explanations for an adverse employment decision can often support a reasonable inference that the facts are in dispute and that an employer's stated reason was not the real reason for its decision." *Donley v Stryker Sales Corp*, 906 F3d 635, 638 (CA 7, 2018). See also *Walker v Johnson*, 418 US App DC 364; 798 F3d 1085, 1092 (2015) ("A plaintiff may support an inference that the employer's stated reasons were pretextual . . . by citing the employer's . . . inconsistent or dishonest explanations[.]"). Defendant argues that the letter is inadmissible hearsay and also not admissible under MRE 408.[6] However, it appears that the letter would be admissible as nonhearsay under MRE 801(d)(2) as an adoptive admission by defendant's agent. With respect to MRE 408,[7] while the letter was sent in response to a demand letter from plaintiff and mentions plaintiff's hope for "a better settlement" than his severance package, defendant's counsel was not offering or accepting a compromise to settle the case, nor was defendant's counsel negotiating with plaintiff's counsel such that MRE 408 would apply. Accordingly, we conclude that the letter would be admissible, and it plainly provides strong support for plaintiff's claim of pretext.

In sum, viewing the evidence in a light most favorable to plaintiff, a reasonable jury could conclude that defendant's legitimate, nondiscriminatory reason for plaintiff's termination was pretextual. However, a question of fact on pretext does not necessarily establish a question of fact on the ultimate question of whether plaintiff was unlawfully discriminated against. As the Supreme Court has explained:

> [D]isproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action. *In other words, plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for age or sex discrimination.* Therefore, . . . in the context of summary disposition, a plaintiff must prove discrimination with admissible evidence, either direct or circumstantial, sufficient to permit a reasonable trier of fact to conclude that discrimination was a

---

[6] "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 470; 957 NW2d 377 (2020).

[7] MRE 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

motivating factor for the adverse action taken by the employer toward the plaintiff. [*Lytle v Malady (On Rehearing)*, 458 Mich 153, 175-176; 579 NW2d 906 (1998) (emphasis added).]

See also *Town*, 455 Mich at 697 ("Ultimately, the plaintiff will have the burden of producing evidence, whether direct or circumstantial, that proves that discrimination was a determining factor in the employer's decision.").

As discussed, plaintiff's claim rests on an assertion that he was treated differently from similarly situated employees who were also making complaints. As to sex discrimination, plaintiff's theory of the case is encapsulated by his alleged complaint to HR that "[i]f I was a woman and [Cox] was a man, and I was a woman talking to you about these concerns that I have with this male counterpart, I'm sure that you would have done something about this situation." But to create an inference of disparate treatment on the basis that he was treated differently than a similarly situated employee of a different gender, plaintiff must prove that "all of the relevant aspects" of his employment situation were "nearly identical" to those of his coworker's employment situation. See *id*. at 699-700. A review of the record evidence shows that plaintiff cannot meet this burden.

First, there are material differences between the nature of plaintiff and Cox's complaints. Cox's concerns about plaintiff related to how he was treating her. Specifically, Cox complained in an e-mail to HR that plaintiff belittled her in a meeting and plaintiff would ask her to do non-job-related tasks such as taking his garbage out. In short, Cox was claiming that plaintiff was subjecting her to insensitive criticism in front of others and inappropriate comments. In contrast, plaintiff's complaints against Cox largely related to her personality, and Helner's advice to plaintiff was to focus on work and not his personal opinions of his colleagues.[8] While plaintiff also complained about Cox's work performance, there is no indication in the record that defendant found these complaints to have serious merit.

There is also the manner in which plaintiff and Cox expressed their complaints. The record shows that beginning as early as September 2018, Cox stated her concerns to HR in calmly worded e-mails. Cox never made specific demands relating to plaintiff. Instead, her complaints were aimed at improving her work environment. Plaintiff only began making complaints to HR after he learned of Cox's complaints. Helner testified that on two occasions plaintiff came to her office to complain about Cox and even though she told him she was busy, he refused to leave until she agreed to meet with him. Plaintiff's own testimony shows that he refused to leave Helner's office on June 25, 2019:

So I went in there, and she said she couldn't meet with me. She had other more important matters to deal with. So I stood in front of her chair, and she said she

_____

[8] Plaintiff testified that he also expressed concerns to Helner that Cox would engage in workplace violence. Plaintiff's concern was based on Cox's "general demeanor" and the fact that she "was not a petite woman." There are no allegations of actual workplace violence against Cox.

could talk with me. She said, "Okay. I've got a couple of minutes." She's sitting at her desk. At her desk, there's two chairs. I'm standing behind them, and I said, "Look. Nothing has been done here. We've got to do something."

Helner also testified that plaintiff was angry in these unscheduled meetings and that the focus was on getting him to leave the HR office. She informed defendant's manager and corporate counsel of these instances.

When the circumstances of plaintiff's and Cox's complaints are considered, there is no basis for a reasonable jury to conclude that defendant's alleged decision to end plaintiff's employment was based on his gender. Rather, the evidence strongly suggests that plaintiff was exhibiting the most problematic behavior of the warranty group. Defendant could have reasonably determined that plaintiff's behavior toward both Cox and Helner warranted dismissal. Indeed, the required counseling in September 2019 to address whether the work environment had improved following plaintiff's departure points to such a conclusion. Plaintiff may dispute Cox and Helner's accounts and any conclusion that he was the problem with the warranty team, but *from the employer's perspective*, plaintiff and Cox were not similarly situated in all relevant aspects and their complaints were not nearly identical. Defendant was receiving complaints and reports of plaintiff from Cox and Helner indicating a lack of self-control, short temper, inappropriate conduct and an inability to set aside his personal opinion of a colleague. Plaintiff's complaints about Cox, on the other hand, concerned her work performance—which could have been addressed by defendant if it agreed with plaintiff's assessment—and his dislike of her personality. Given these differences, the mere fact that plaintiff and Cox both made complaints about each other does not allow for a reasonable inference that defendant's termination of plaintiff's employment was motivated by his gender.

Plaintiff does not identify other evidence supporting that conclusion. Plaintiff claims that Cox was provided "counseling" or instructions, and he was not. Plaintiff is referring to the advice given to Cox by HR employee Crystal Rodriguez in November 2018 on how to deal with plaintiff. However, Helner also gave plaintiff advice, i.e., focus on his work and not his personal opinions of colleagues. There is no indication that plaintiff gave this advice any credence. Plaintiff also claims that Huang stated, "Be nice to her. She's a woman," when presented with complaints about Cox. But plaintiff does not even attempt to argue that this stray, isolated statement shows that defendant treated women more favorably than men. Courts consider five factors to determine whether stray remarks are probative of discrimination:

> (1) whether they were made by a decision maker or an agent within the scope of his employment, (2) whether they were related to the decision-making process, (3) whether they were vague and ambiguous or clearly reflective of discriminatory bias, (4) whether they were isolated or part of a pattern of biased comments, and (5) whether they were made close in time to the adverse employment decision. [*Major*, 316 Mich App at 543-544.]

Huang was a decision maker in plaintiff's termination, but his alleged statements are not related to the decision-making process. Nor are they clearly reflective of discriminatory bias against men. Plaintiff does not claim that Huang's statements were "part of a pattern of biased comments." *Id*.

And there is no indication in the record that Huang made such a statement close in time to the termination of plaintiff's employment.

Given the lack of evidence indicating gender discrimination, any conclusion to that effect would necessarily be based on speculation, and speculation or conjecture is insufficient to establish that unlawful discrimination was a motivating factor for the adverse employment action. *Sniecinski*, 469 Mich at 140. This same reasoning applies to plaintiff's age discrimination claims. While younger warranty engineers also made complaints about Cox, plaintiff was the only one who brought those concerns to HR, where on at least one occasion he inappropriately refused to leave Helner's office until she spoke with him. Further, it appears that plaintiff was the only warranty engineer that Cox specifically complained about. Because plaintiff was not similarly situated to the other engineers in all relevant aspects, a reasonable jury could not conclude that plaintiff was unlawfully discriminating against on the basis of age solely because other engineers also complained about Cox.

In sum, multiple members of the warranty group made complaints relating to the work environment. But the nature of the complaints against plaintiff, and the manner in which he pursued his own complaints, negate any inference of discrimination on the basis that similarly situated employees outside of plaintiff's protected classes were treated differently. And plaintiff has provided no other evidentiary basis from which a reasonable jury could conclude that defendant terminated plaintiff because of his gender or age. Accordingly, the trial court correctly granted summary disposition of plaintiff's claims.

## B. RETALIATION

The trial court also correctly granted summary disposition of plaintiff's retaliation claim because he cannot show that he engaged in "protected activity."

ELCRA states in pertinent part:

Two or more persons shall not conspire to, or a person shall not:

> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701(a).]

"To establish a prima facie case of unlawful retaliation under [ELCRA], a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997).

Plaintiff claims that he was retaliated against after he made claims of gender discrimination to defendant's HR. Defendant argues that this claim fails because plaintiff did not engage in protected activity. A protected activity for purposes of ELCRA is "opposing a violation of the [ELCRA]'s antidiscrimination provision." *White*, 334 Mich App at 114.

-10-

An employee need not specifically cite [ELCRA] when making a charge under the act. However, the employee must do more than generally assert unfair treatment. See *Mitan v Neiman Marcus*, 240 Mich App 679, 682; 613 NW2d 415 (2000) (holding complaints amounting to generic claims of "job discrimination" did not qualify as a charge made under the Persons with Disabilities Act, MCL 37.1101 *et seq*.). The employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to [ELCRA]. [*Barrett v Kirtland Community College*, 245 Mich App 306, 318-319; 628 NW2d 63 (2001).]

In this case, plaintiff began making complaints about Cox in January 2019 when he and other warranty engineers met with Huang. Plaintiff testified that he did not bring up concerns at this meeting that he was being treated differently because of his gender. Nor did plaintiff bring up gender concerns when he spoke with Williams in February 2019. Plaintiff testified that "[g]ender was not the big issue at that time." Thus, plaintiff's initial, repeated complaints about Cox were "generic, non-sex-based complaints regarding his working conditions and . . . those complaints were not based on sex." *Barrett*, 245 Mich App at 319-320. Plaintiff testified that his concern about being treated differently from Cox on the basis of gender "was not the primary focus initially until I determined that there was a pattern." Plaintiff claims that he told Helner at their last meeting on June 25, 2019, that if his and Cox's gender roles were reversed, something would have been done about his complaints. Helner denies that plaintiff told him this, but we must accept plaintiff's deposition testimony as true for purposes of defendant's motion under MCR 2.116(C)(10). See *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 346; 941 NW2d 685 (2019).

Even so, we conclude that a last-minute complaint to this effect would not have "clearly convey[ed] to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to the [ELCRA]." *Barrett*, 245 Mich App at 319. Again, the work environment problems in the warranty group were well-established. There were repeated complaints from multiple members of the group beginning as early as September 2018. Before June 25, 2019, none of the complaints indicated that a member of the group believed they were being discriminated against by defendant on the basis of gender. Moreover, plaintiff's complaints were aimed at Cox's work performance and his dislike of her personality. As Helner testified, plaintiff's complaints were "about the fact that [he and Cox] did not get along." Plaintiff's own thorough notes and timeline of events confirm that his claimed complaint about gender discrimination was merely an isolated statement in a laundry list of complaints that he presented to defendant over several months.[9]

Under the circumstances of this case, plaintiff's single alleged statement about gender role-reversal would not have clearly conveyed to an objective employer that plaintiff was raising the

---

[9] Further, at the time the disputed comment was made, plaintiff's claim of preferential treatment had no basis in fact. That is, both plaintiff and Cox had been repeatedly complaining about each other, and neither had obtained a favorable resolution. Accordingly, the facts at that time did not support plaintiff's view that a woman making complaints against a man would have received more favorable treatment from defendant.

specter of a gender discrimination claim. Because plaintiff did not engage in protected activity, he cannot establish a prima facie case of retaliation.

Affirmed. Defendant may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Anica Letica